CASE 20.—ACTION BY L. H. CROSBY AND OTHERS AGAINST
THE CITY OF MAYFIELD TO TEST THE LEGALI-
TY OF A SCHOOL TAX.—March 25, 1909.

# Crosby, &c. v. Mayfield

Appeal from Graves Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for defendant, plaintiffs appeal—Af-
firmed.

1.  Municipal Corporations—Taxation—Bonds—Validity of Elec-
    tion. —Under Const. Sec. 157, providing that no taxing dis-
    trict shall be permitted to become indebted to an amount ex-
    ceeding in any year the income and revenue provided for such
    year without the assent of two-thirds of the voters thereof,
    and Section 187, providing that separate schools for white
    and colored children shall be maintained, the issuance of
    bonds by a city for the purchase or erection of school build-
    ings for white children and paid by taxes on the property of
    white people cannot be enjoined because the question of the
    issuance of such bonds was submitted only to the white voters
    of the city, there being separate schools in the city for the
    white children under the supervision of a board of educa-
    tion and supported by the general tax fund and a special tax
    on the property of the white people, and separate schools
    for colored children supported by the general tax fund and
    a separate tax on the property of colored people.
2.  Constitutional Law—Equal Protection of Laws—Discrimina-
    tion By Reason of Color.—Where the State divides its school
    fund equally among all the children of the State, white and
    colored, providing further support for the schools by the tax-
    ation of property owned by white persons to be used for the
    support of schools for white children and taxation of property
    owned by colored persons for the support of schools for col-
    ored children, it does not violate Const. U. S. Amend. 14, by
    discriminating between the races.

W. P. LEE for appellant.

Appellants, L. H. Crosby, a white man, and A. G. Taylor, a col-
ored man, citizens and taxpayers of the City of Mayfield, contend
that the ordinances and the Acts of the Legislature authorizing the
same are unconstitutional and void as being a discrimination be-
tween the white and colored children of said city, and contend

further that it is creating an indebtedness and obligation upon the taxpayers of said city without the same being first authorized by a vote of the people of the city.

Ky. Constitution, Sec. 157; Dawson v. Lee, etc.; 83 Ky. page 49; Kentucky Statutes, Sec. 3490, subdivision 34.

1. Cities of the fourth class have the right to assess a tax rate for school purposes, at not exceeding 50 cents. (Section 157, Kentucky Constitution.)

2. The Legislature has the right to provide for common schools throughout the State. (Kentucky Constitution, Section 183.)

3. Under charters of fourth class cities the Council has the right to establish graded school systems. (City Council of Richmond v. Powell, 16, Ky Law Rep., page 174.)

4. Separate schools shall be maintained for white and colored children. (Kentucky Constitution, Section 187.)

5. The taxes may be levied upon the property of white citizens in aid of white schools and upon the property of colored people in aid of colored schools. (The Board of Education of Somerset Public Schools v. Trustees Colored District, No. 1, Pulaski Co., 18, Ky. Law Rep., page 103.)

6. A city of the fourth class may create a bonded indebtedness in aid of white graded schools, by the consent of two-thirds of the qualified white electors. (Bowman, etc., v. City of Middlesboro, 28, Ky. Law Rep., page 1290; Kentucky Statutes, Sections 3490.)

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Under ordinances passed by the board of council pursuant to the statute there exist in Mayfield two separate schools—one for the white children under the control of a board of education, and another for the colored children under the control or another board of education. Each school receives from the State its pro rata of the school fund as provided in the Constitution and the statutes. The city levies a tax of 19 cents on each $100 of the property of white people for the benefit of the white school, and a like tax on the property of the colored people for the benefit of the colored school. On September 10, 1908, the board of education for the white graded school represented to the board of council that it was necessary to raise $75,000 to be used in the purchase or erection of school buildings in the city. The council, pursuant to the request of the board of education, enacted an ordinance submitting to the white voters of

the city the question whether they would authorize the board of council to incur an indebtedness of $75,000 to be used in the purchase or erection of school buildings in the city, and to be paid by taxation upon the property of the white people subject to taxation. The election was duly held. Eight hundred and fifty-one votes were cast in favor of the proposition, and 65 were cast against it. The result was certified to the council, and it was proceeding to issue the bonds, when this suit was brought by one white man and one colored man to enjoin the bonds being issued. The circuit court dismissed the petition, and the plaintiffs appeal.

The first proposition made is that the proceeding is in violation of Section 157 of the Constitution, which so far as material is as follows: "No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void." It is insisted that two-thirds of the voters of the municipality have not authorized the incurring of the debt because the proposition was only submitted to the white voters, and not to all the voters of the municipality. The proposition is to incur an indebtedness to furnish the white school with proper school buildings. The question was submitted to all the white voters or to all the persons who have any interest in the question, or who will be liable in any manner for the tax. The meaning of the Constitution is that no liability shall be imposed without the assent of the voters; but it was not intended by the Constitution that the question should be submitted to persons who had no interest in it. The boundary of the city constitutes the white school district. This

white school district is a municipality within the meaning of the section. The tax is levied upon the property of the white persons in this district, and these white persons are the voters in this municipality. In like manner a similar tax might be submitted to the colored voters for an improvement of the buildings of the colored school. Section 187 of the Constitution provides that separate schools for white and colored children shall be maintained. This provision of the Constitution requires the General Assembly to maintain separate schools for the white and colored children; and, if questions of taxation could not be submitted to the white people when they concern the white schools or to the colored people when they concern the colored schools, the growth of the school system in the State would seriously suffer, for each race is more directly interested in its own school than in the school of the other. Section 157 must be read in connection with Section 187; and, when so read, it in no manner interferes with the power of the General Assembly to submit to either race questions of taxation affecting only its own school. This question was before us in Bowman v. Middlesboro, 91 S. W. 726, 28 Ky. Law Rep. 1290, and we there sustained a proceeding similar to this.

It is also insisted that the effort to maintain the white school by the taxation of the property owned by white persons and to maintain the colored school by taxation of the property owned by colored persons is a discrimination between the races in violation of the fourteenth amendment to the Constitution of the United States. The State divides equally among all the children of the State, without regard to race or color, the funds raised by taxation for school purposes. But, when the question is submitted to a local community as to whether or not the community will vote an additional tax for the betterment of its local school, this being a voluntary matter is submitted as to the white school to the white voters, and as to the

colored school to the colored voters. The question of supplementing the State funds is left wholly to the vote of the locality. The voter is simply allowed to vote a tax upon himself if he wishes to do so to support his own school. While this precise question is not referred to in any of the opinions, we have in a number of cases sustained schools organized under the act and taxes on white people voted under it. See Board of Education of Somerset v. Trustees Colored District, 35 S. W. 549, 18 Ky. Law Rep. 103; Harrodsburg Education District v. Trustees, 105 Ky. 675, 9 R. 605, 49 S. W. 538; United States Fidelity, etc., Company v. Board of Education, 118 Ky. 355, 80 S. W. 1191, 26 R. 246.

Judgment affirmed.