CASE 54.—ACTION BY EMMA C. SALYER AGAINST THE UNITED STATES FIDELITY & GUARANTY CO., AND OTHERS AS SURETY FOR JOHN S. CARTER, SHERIFF, TO COLLECT CLAIMS OWING BY CARTER TO HER.—January 21.

## U. S. Fidelity & Guaranty Co. v. Salyer

Appeal from Morgan Circuit Court.

J. B. HANNAH, Circuit Judge.

From the judgment, the Guaranty Company appeals.—Affirmed.

1. Sheriffs and Constables—Official Bonds—Liability of Sureties. Under Ky. Stats. 1909, section 4134, authorizing the county court to require the sheriff to give additional bonds, and providing that the sureties on all the bonds shall be jointly and severally liable for any default occurring during the term of office, official bonds of the sheriff cover his entire term of office and all the sureties are co-sureties.

2. Same.—Where the county officers, taking the bonds of the sheriff executed in one year, had no knowledge that the bonds were void, because of the forgery of the signature of one of the sureties thereto, and a surety in the bonds given

U. S. Fidelity & Guaranty Co. v. Salyer.

in a subsequent year had equal opportunity with the county to ascertain whether the first bonds were invalid, the surety in the subsequent bonds was, as against the commonwealth, county, and public, liable for the sheriff's malfeasance.

3. Same—Validity.—Under Ky. Stats. 1909, section 1060, requiring all orders of the county court to be spread by the county clerk in the record book kept for that purpose, and that if the regular judge shall fail to sign the records they may be signed by his successor, the failure of the judge to sign the order approving the sheriff's bond does not render the bond void, but the order may be signed by his successor in office.

4. Counties—Claims—Allowance—Effect.—A sheriff of a county having no treasurer who had claims against the county, which were allowed at a term of court in one year to be payable out of the county levy of the following year, and who took up the claims as credits on the county levy for such year, and who had no money in his hands with which to pay the same, might assign them, for the claims were not paid merely because they reached the·sheriff's hands.

FINLEY E. FOGG for appellant.

### CASES · CITED.

Fidelity & Deposit Co. v. Comth., 104 Ky. 579; Berry v. Comth., 95 Ky. 443; Howard v. Comth., 20 Ky. Law Rep. 1411; Schuff v. Pflanz, 99 Ky. 97; Pulaski County v. Watson, 106 Ky. 500; Catron v. Comth., 21 Ky. Law Rep. 650; Ketler v. Thompson, 13 Ky. Law Rep. 287; Ridgway v. Moody's Admr., 91 Ky. 581; Constitution, sec. 99; Ky. Stats., sec. 4134.

McGUIRE & McGUIRE and S. MONROE NICKELL for appellee.

### AUTHORITIES CITED.

Ky. Stats., secs. 1884, 4133, 4134 and 4556; 5 Cyc. of Law & Procedure, p. 758, sec. 5; Comth. v. Howard, 49 S. W. 466; Fidelity Deposit Co. v. Comth., 104 Ky. 579; Comth. v. Tate, &c., 89 Ky. 603; Wade v. Mt. Sterling, 33 S. W. 1134; Tate v. Comth., 13 S. W. 113; Terry, &c. v. Hazelwood, 1 Duv. 109; Jones, &c., v. Gallatin County, 78 Ky. 493; Comth v. Teal, 14 B. M. 24; Hall v. Smith, 14 Bush 610; Wheeler v. Traders Deposit Bank, 55 S. W. 552.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Affirming.

John S. Carter was elected sheriff of Morgan
county, Kentucky, at the November election, 1897, for
a term of four years. On December 23, 1897, he took
the oath of office, and thereafter served the term for
which he was elected. At the time he was permitted
to qualify there were filed, in the office of the county
clerk, three bonds, State revenue, county levy, and
official, purporting to have been executed by said Car-
ter, with W. W. Howes, B. F. Carter, J. H. Burns,
W. G. Carter, L. D. Carter, J. W. Perry, J. C. Oakley,
D. P. McKenzie, G. B. Lykins, J. D. Whittaker, and
Alex Whittaker as sureties on each bond. The order
book on that day shows that the said bonds were exe-
cuted, accepted, and approved by the court, and said
Carter permitted to qualify. The names of the sure-
ties were signed to the bonds by Sanford Davis as
attorney in fact of the sureties, under what purported
to be a regular power of attorney executed by all the
proposed sureties. This power of attorney was filed
with the bond. In December, 1898, Carter renewed
the three bonds, with appellant, United States Fidelity
& Guaranty Company, as surety. On January 7, 1900,
Carter renewed his official bond, with W. G. Carter,
O. W. Burns, B. F. Carter, S. W. Cecil and W. M.
Kendall as sureties, and on February 12, 1900, he
renewed his official, county levy, and revenue bonds,
with appellant as surety. On January 7, 1901, Carter
again renewed all his bonds with appellant as surety.
At the time of Carter's incumbency the county of
Morgan had no treasurer, and the county levy was
made payable to persons entitled to receive it on

claims or orders drawn by the fiscal court on the sheriff, against the fund collected for the year out of which the claim or order was made payable. On February 29, 1904, appellee, Emma C. Salyer, instituted this action against Carter and appellant on the renewal bonds for 1900 and 1901, to enforce collection of various county claims allowed to her, and to other persons, and assigned to her, payable out of the levies for the years 1900 and 1901. Appellant answered, pleading payment of some of the claims. By an amendment it pleaded the further defense that, on the 23d day of December, 1897, Morgan county accepted the official bond of said Carter, with W. W. Howes and others mentioned above as sureties; that said bond and the orders accepting and approving the same were regular upon their face; that in executing the annual, additional, or subsequent bonds, appellant executed them upon the faith and assumption that all the sureties in the first bond had signed it, and that it was becoming a co-surety with all the others, and not the sole surety; that L. D. Carter, one of the sureties in the first bond, did not sign the power of attorney, and was therefore not bound by it; that the others who signed with Carter did so believing at the time that he was bound with them, and that all of them were released for the reason that L. D. Carter had not signed the bond; that, as they were released, appellant was therefore not bound. At a subsequent term of the court appellant filed a second amended answer, alleging that on January 7, 1900, O. W. Burns and others (and before appellant became bound) attempted to execute an additional bond for said Carter, and that Burns and others signed the bond, and the orders approving and accepting the same were entered on the county court order book, but were never signed

by the judge of the court; that Burns and those signing with him were never bound on the bond; that appellant was misled and imposed upon by reason of the failure of the county judge to sign the orders aforesaid; that by reason of that fact it was released from any liability on the bond sued on. Appellee filed a reply controverting the affirmative allegations of appellant's original answer in regard to the payment of certain claims. Demurrers were sustained both to the first and second amended answers. A trial by jury was waived by both parties, and the case submited to the court, who rendered a judgment for appellee. From that judgment this appeal is prosecuted.

The first question presented is the propriety of the court's action in sustaining a demurrer to the amended answers. Counsel for appellant contend that the facts pleaded in the amended answers bring this case within the rule laid down in the case of Commonwealth v. Berry, 95 Ky. 443, 26 S. W. 7, 15 Ky. Law Rep. 833. In that case the State revenue bond of Hawkins, sheriff of Franklin county, was signed by said sheriff and by John W. Jackson, Peter Smith, William Anderson, and R. D. Armstrong and his sureties. By an order of the Franklin county court, at its December term, 1880, this bond was filed and approved by the presiding judge of the court. On June 6th thereafter, in pursuance of notices given by Armstrong and Jackson, two of the sureties, the court required Hawkins to execute an additional bond on behalf of the State revenue, and providing indemnity for those making the motion to be released. Berry, the appellee in that case, signed the additional bond. Smith and Anderson, the two sureties who had not taken any steps for indemnity, but who supposedly

remained bound with Berry for the acts of Hawkins, filed their separate answers to the effect that when they signed the bond of December 11, 1880, the names of Henry Smith and W. A. Moore were in the body of it, and by agreement in open court the bond was not to be finally accepted or approved until these persons signed it, as well as G. W. Craddock, Wm. Risk, and Thomas Scott, whose names were not in the body of it, but that in violation of the agreement with the presiding judge, and in defiance of the express conditions upon which, in open court, they had signed the bond, the court had subsequently, and without their knowledge, accepted and approved it.  Berry set up by amended answer the facts developed by the answers of his co-defendants Smith and Anderson, and claimed that the contract he had undertaken was to take the place of the dissatisfied sureties, Armstrong and Jackson, and stand bound for any default of Hawkins, in conjunction with Smith and Anderson, and that, as by the act of the court the latter were released, he also was released.  The demurrer of the Commonwealth to Berry's amended answer was overruled by the lower court, and, the State declining to plead further, the proceeding was dismissed as to Berry.  On appeal to this court it was held that it was the duty of the officer acting for the State to communicate to Berry the facts connected with the execution of the bond by Smith and Anderson; that by reason of their failure to do so Berry entered into an undertaking different from that into which he supposed he was entering. The  court based its conclusion upon the  following quotation from 1 Story's Equity Jurisprudence, section 215: ''Thus if a party taking a guaranty from a surety conceals from him facts which go to increase his risk, and suffers him to enter into contract under

false impressions as to the real state of facts, such concealment will amount to a fraud, because the party is bound to make the disclosure, and the omission to make it under such circumstances is equivalent to an affirmation that the facts do not exist." The court accordingly held that Berry was released from lability on the additional or new bond which he executed.

The position of appellant is that the State revenue, county levy, and official bonds executed in December, 1897, were binding for the full term of the sheriff; that the sureties on those bonds were therefore co-sureties with appellant on the bonds subsequently executed by it, and that, as the sureties on the first three bonds executed in December, 1897, were released because of the forged power of attorney, appellant, who executed the subsequent bonds upon the assumption that the former bonds were valid, was also released. Without passing upon the question whether or not the county levy bond covers any defalcation for any year other than that for whch it was executed, we may say that the State revenue and official bonds did cover the entire term of the sheriff, and that sureties on a bond subsequently executed are co-sureties on the bond executed in December, 1897, and in case of defalcation the latter could enforce contribution from the former. Ketler, etc., v. Thompson, 13 Bush 287; Ridgway, etc., v. Moody's Admr., 91 Ky. 581, 16 S. W. 526, 13 Ky. Law Rep. 188; Ky. Stats., 1909, section 4134. It will be observed that the amended answer contains no allegation that the county officers taking the bond under the forged power of attorney had any knowledge or notice that the power of attorney was forged. So far as the record, then, shows, appellant had equal opportunity with the county of-

ficers to ascertain whether or not the bonds taken in the year 1897 were invalid. The question, then, is whether or not, under the facts of this case, there was such a connection between the bonds executed on a forged power of attorney and the bonds executed by appellant as to release the latter because of the invalidity of the first bond.

This is not an action where certain sureties on a State revenue bond asked to be released and indemnified as provided by the statute. It is simply a case where a separate and independent undertaking was executed by appellant. The primary purpose of the law making the sureties on the State revenue and official bonds liable during the whole term of the sheriff is to protect the public. Incidentally the law affords some protection to sureties on subsequent bonds, because the latter may enforce contribution from the former. There may be some reason in holding that where certain sureties on a particular bond are released, other sureties on the same bond are also released. It is a joint undertaking, and each surety signs it upon the assumption that the other sureties are bound. Such relationship does not exist between sureties on different bonds. They are separate undertakings. The officers of the county or Commonwealth did not mislead appellant by concealing from it any facts as to the bonds executed in 1897, which, if known by appellant, might have deterred it from executing the subsequent bonds. There was no implied undertaking on the part of the Commonwealth or the county that the bonds first executed by the sheriff were in all respects valid. Having equal opportunity with the county officers to ascertain whether or not the bonds executed in the year 1897 were invalid, we think appellant, therefore, assumed

the risk of the invalidity of the first bonds. That being the case, we are of opinion that, as between the Commonwealth, county, or public and the appellant, the latter should stand the loss occasioned by the misfeasance of the sheriff.

Nor do we think there is anything in appellant's contention that the failure of the county court to sign the order approving the bond executed in January, 1900, by John S. Carter, sheriff, with W. B. Carter, O. W. Burns, and others as securities, rendered that bond void. The statute in force at the time this order was entered, and in force now, is widely different from the old statute making the validity of all orders depend upon whether or not they were signed by the county judge. The present statute, and the one in force at the time the order referred to was entered, is as follows: "Sec. 1060. The judge shall cause all orders and judgments of the county court to be spread by the county clerk upon the record book to be kept for that purpose. The records shall show the day upon which the court was held, and by whom, and shall be signed by the county judge, or the special judge who presided when the record was made; and if the regular judge should, for any cause, fail to sign the records, they may be signed by his successor; and if the special judge should, for any cause, fail to sign the records made by him, they may be signed by the regular judge " By this statute it is provided that, if the regular judge should, for any cause, fail to sign the records, they may be signed by his successor. That being the case, the order approving the bond executed in January, 1900, by the sheriff, with Carter, Burns, and others as sureties, is not void. If not, therefore,

signed by the county judge then in office, or his successor, it may still be signed by his successor.

In addition to the defense discussed above appellant pleaded payment of the amount of the Womack claim, $146.25, and the W. A. Lacy claim, $104.25. It further pleaded that the four certain claims sued on, for the sums of $6, $11.50, $60, and $90, respectively, were claims in favor of John S. Carter as sheriff; that they were allowed at the October term, 1900, of the Morgan fiscal court, and were paid out of the county levy as of 1901; that these claims were taken up by him as credits on the county levy of 1901, and were afterwards discounted by him to the appellee, Sayler; that at the time they were so discounted they were, in point of law and fact, paid and discharged. The agreed statement of facts shows that appellee was not paid anything, either on the Womack claim of $146.25, or the Lacy claim of $104.25, nor were the parties in whose favor the claims were allowed. The only evidence of payment is that the letter "F" was placed on a margin of the claimbook opposite these claims. Why it was there, or under what circumstances it was put there, does not appear. The mere fact that the letter "F" was there is not sufficient to overcome the positive evidence of appellee's witnesses to the effect that these claims had not been paid. As to the claims of $6, $11.50, $60, and $90, in favor of Carter while he was sheriff, and assigned by him to appellee, appellant contends that they were either allowed to, or taken up by, the payor before they came to the hands of the appellee. From the agreed statement, however, it does not appear that the sheriff had money in hand with which to pay the claims at the time he had them in his possession. The record shows that these claims

were allowed at the October term, 1900, and were payable out of the county levy of 1901. These payments, therefore, were not due at the time they were assigned to appellee. As the sheriff, Carter, had no money in his hands with which to pay them, he had the right to assign them to appellee. Under the facts shown by the record, these claims were not, in contemplation of the law, paid merely because they had reached the hands of the payor. We, therefore, conclude that the trial court properly disregarded the plea of payment of these contested claims.

Judgment affirmed.