## Fidelity & Casualty Co. of New York v. Breathitt County et al.

Dec. 2, 1938.

176

O. H. POLLARD and RICHARD PRIEST DIETZMAN for appellants.

GRANNIS BACH, ERVINE TURNER, BRUCE & BULLITT and D. L. STREET for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

This is an appeal from a judgment of the Breathitt circuit court in favor of Breathitt county in a suit brought by the county against Lee Combs and his surety, the Fidelity and Casualty Company of New York, to recover taxes, interest and penalties which the county claimed Combs owed by reason of money collected during his term as sheriff and which he had failed to account for and pay over to the county.

Combs qualified as sheriff and began the discharge of his duties on the first Monday in January, 1930. The sureties on his official bond were the appellees, S. L. Combs, Ervine Turner, Lewis Combs, and J. S. Hollon. Later, Combs executed his revenue bond for the year 1930, with appellant as surety, and each year thereafter during his term of office renewed his revenue bond, as

required by statute, with appellant as surety. In April, 1931, Combs made his sheriff's settlement with the fiscal court of his tax collections for the year 1930. At the April term 1932, he made a like settlement for the year 1931, and in July, 1933, a like settlement for the fiscal year 1932.

All of the above settlements were approved by the fiscal court, but no one of them was ever filed or recorded in the county clerk's office in accordance with the provisions of Section 4146, Kentucky Statutes; nor were any exceptions filed to any of them.

While we stated above that this was an action, there were really two actions filed, Nos. 2063 and 2122, which were consolidated and tried together.

Action No. 2063 sought to surcharge the three settlements above mentioned. After alleging that Combs, during the years in question, duly filed his settlements for the respective years with the fiscal court, which were accepted and approved, the petition attacks the settlements in certain particulars (hereinafter stated) and concludes with a prayer, "that the settlements made by Combs for 1930, 1931 and 1932 be surcharged in the particulars herein set forth."

Combs' term of office came to an end with the close of the term 1933. He was appointed, in January, 1934, collector of unpaid taxes for the fiscal year 1933 and executed bond with appellant as surety. In July, 1934, he settled with the fiscal court for his tax collections for the fiscal year 1933. This settlement was approved by the fiscal court, filed with the county court, duly recorded, and, no exceptions having been filed, was approved by the county court.

The petition in action No. 2122, after setting out the settlement of Combs as tax collector of unpaid taxes for the fiscal year 1933, concludes with a prayer for judgment for amounts shown to be due the county by the settlement. To this petition Combs and appellant filed demurrer, answer, counterclaim and set-off. In the answer, counterclaim and set-off Combs and his surety denied that Combs made the settlement and sought to surcharge and correct the alleged settlement made.

In action No. 2063, which had been consolidated with No. 2122, the appellant filed a cross-petition against

S. L. Combs, Ervine Turner, Lewis Combs and J. S. Hollon, sureties on the official bond of Combs, sheriff, setting out the execution of the official bond by these sureties and alleging that they were co-sureties with appellant and as such liable for any defalcation committed by Combs as sheriff and that they were obligated to pay the county ratably for all sums of the county revenue Combs had collected and failed to account for. It further alleged that the county should be required to assert against these co-sureties its claim on account of the alleged liability of Combs as set out in the petitions in these two actions, the prayer being that these sureties on the official bond be made parties-defendant and required to pay one-half of any sum adjudged to the county in the action.

The demurrer filed to this cross-petition by sureties on the official bond was sustained and, the Fidelity and Casualty Company declining to plead further on their cross-petition, it was, by the final judgment herein, dismissed, from which final judgment also appellant prosecutes this appeal.

After the general and special demurrers of Combs and appellant to the petitions as amended in the two actions had been overruled, subsequent pleadings made up the issues and the case was referred to the master commissioner who made a report of findings. Exceptions were filed to the report by both sides. The court overruled these exceptions and confirmed the report and the judgment entered by the court followed the findings of the commissioner.

In addition to the appeal prosecuted by appellant from this judgment, the county also files a cross-appeal complaining of a number of errors therein and this cross-appeal, together with the original appeal, present a large number of questions of law and fact which we will here list in order and, without stating in advance the facts applying to each question, we will take up each question separately and in considering the questions one by one will state the facts in connection therewith, where a discussion of facts is necessary. The following questions are raised by the appellant on its appeal from the judgment in favor of the county against it.

(1) The court erred in overruling the demurrer to the petition in action No. 2063.

(2) The court erred in entering judgment for the county against Combs and/or his surety for the alleged failure of Combs to account for taxes collected for the Library Fund.

(3) The court erred in failing to give Combs credits to which he was entitled for the years involved in this litigation.

(a) Error in refusing to allow credit on the 1930 general fund county warrants aggregating $5,215.75 which the court adjudged were not owned by Combs, but had been used by Cockrell, a former sheriff, in his settlement.

(b) Error in giving judgment for balance due on 1930 road sinking fund of $1,234, as petition only claimed $885.29.

(c) Error in refusing to allow Combs a credit of $2,241, which had been allowed him on purported settlement and rejected by judgment in this action.

(d) Error in disallowing the following credits on the 1932 general fund:

(1) A credit of $995.89 in county warrants disallowed by court because the warrants were not due and owing by the county, but had been used as credit in former sheriff's settlement.

(2) Credit of $1,657.28, interest on warrants turned in on purported settlement.

(3) Credit of $986.34 in warrants turned over by sheriff, being an overpayment, because sheriff was illegally trafficking in warrants.

(4) Credit of $3,498.53 which was deducted from amount by which Combs was given credit for exonerations on 1932 settlement.

(4) The court erred in failing to give appellant credit on the judgment for certain county warrants turned in by Combs in his settlement for the years 1932 and 1933 in excess of his liability for those particular years.

(5) The county is estopped from suing the surety on the sheriff's bonds for the taxable years 1930, 1931, and 1932, because the settlements were not recorded, as is required by law, and not preserved intact by the fiscal

court, and because it accepted payment in full satisfaction of Combs' liability.

(6) In action No. 2122, covering the year 1933, the petition is demurrable because not containing necessary allegations to surcharge the settlement; also, because no allegation that the fiscal court directed any person to bring this suit.

(7) The court erred in failing to give Combs proper credits for the year 1933, in the following particulars:

(a) A credit of $654.41 allowed Combs by order of the fiscal court payable out of the general levy for 1933 was denied.

(b) Combs overpaid by county warrants allowed by the fiscal court in the settlement for which the judgment denied credit.

(c) The judgment denied Combs credit for $266 for building voting houses for which claim was presented to the fiscal court and not allowed.

(d) The judgment denied Combs credit for $701 for advertising land sales for taxes.

(e) Error in disallowance of credit of $1,000 for interest coupons on county funding bonds claimed by Combs.

(8) The County is not entitled to recover penalties in this action.

(9) The court erred in sustaining the demurrer of the sureties on the official bond of Lee Combs and dismissing appellant's cross-petition against them.

The questions raised by the appellees on their cross-appeal are as follows:

(1) The court erred in failing to give judgment for $4,532.49 on the 1933 general fund.

(2) Error in giving Combs credit for warrants turned in on settlement which were illegal because not authorized by order of the fiscal court or county court.

(3) Error in allowing Combs credit for warrants turned in by Combs with the settlements for which he was given credit each year because he was illegally and unlawfully trafficking in county warrants.

(4) Even if Combs was entitled to credits for county warrants the county is entitled to any profit made by Combs on the purchase of the warrants.

We will take up each of the questions presented in the order named above and give our conclusions thereon as briefly as possible considering the nature and importance of the questions.

(1) Appellant insists that the court should have sustained the demurrer to the petition in action No. 2063 because it was not an action seeking a settlement of the accounts of Combs as sheriff for the years 1930, 1931 and 1932, but was an action to surcharge the alleged settlements made for those three years.

The allegations of the petition did set out the fact that settlements had been made for these three years by the sheriff and prayed that the settlements be surcharged. If this had been all the relief asked, we can see there would be considerable argument in favor of appellant's contention, but in addition to this relief the petition also prays for a general accounting.

It is conceded by the county that the settlements set out in the petition were not legal settlements because they were not filed and recorded in the county court. Under these circumstances, as we interpret the rule laid down in the case of Shipp v. Bradley et al., 210 Ky. 51, 275 S. W. 1, the plaintiff was authorized to go ahead with its suit, which was to be considered as an independent action for the recovery of money collected by the sheriff.

As said by the court in this case of Shipp v. Bradley, supra:

"It will therefore appear that, under our construction of the two sections of the statute referred to, the purported settlements, not having been made or recorded according to law were not required to be surcharged under the doctrine of the cases, supra, and that the county through plaintiff, its representative, may maintain this independent action and is not required to follow the practice pointed out by those cases if and where a valid settlement has been made." [page 4.]

We have come to the conclusion that the county had the right to prosecute this action as an independent action for a settlement of the sheriff's accounts and for the money shown to be due by this settlement. In fact, this was practically the procedure followed.

(2) It will not be necessary to consider this question

because the county admits the correctness of appellant's contention. This library fund tax was held to be void by this court in a case decided after the judgment in this case was rendered. On this point therefore the judgment of the lower court must be reversed as judgment was rendered against the appellant for this tax.

3-a. The decision on this point involves purely a question of fact. Combs was given credit in the purported settlement on the 1930 general fund for county warrants aggregating $5,215.75, accepted by the fiscal court as a credit on the amount of taxes collected by Combs for the general fund of that year. These warrants were rejected by the court in this case because of the finding of the commissioner, which was affirmed by the court, that Combs was not in fact the owner of these warrants and that they were not owing by the county. It was the contention of the county that these warrants, together with other warrants aggregating $995.89, which were allowed on the 1932 general fund purported settlement, were warrants which had theretofore been paid and satisfied by the county by giving credit for same to S. J. Cockrell, former sheriff of the county, in his settlement for the year 1929.

Appellant insists most earnestly that this finding of fact was not justified by the evidence because Combs stated emphatically and unequivocally that these warrants belonged to him and that if these warrants had been used in Cockrell's settlement they would have been perforated and marked paid as of the date of his settlement, thereby showing that they were so used. It is true that the county judge of the county testified that at the time Combs made each of his settlements he delivered county warrants to the county, the amount of which he did not remember, and that these warrants were inspected by the fiscal court and by himself as county judge in each year's settlement.

However, we are not inclined to disturb the chancellor's finding of fact on this matter and would not do so even if his finding appeared to be a matter of doubt. But we think there is little, if any, doubt as to the correctness of the chancellor's finding on this point and we do not attach a great deal of weight either to the evidence of Combs or the former county judge, in view of the positive and definite character of testimony of witnesses for the county. Combs stated that he was the

owner of these warrants but did not, in the case of even one of the warrants, give any explanation as to how he obtained them, even though Cockrell had testified positively that all of them were at one time owned by him and that he used them to obtain credit from the county in settlement of amounts due by him on tax collections.

Not only do we have Cockrell's testimony on this point, but most of the warrants, if not all of them, were shown to have been owned by other parties at one time or another and a large number thereof were traced directly into Cockrell's hands.

In view of this showing, Combs' bald statement that he was the owner of the warrants does not appear to us in anywise satisfactory. When a large number of the warrants had been traced into Cockrell's hands, and when Cockrell had testified that he had used these warrants in his settlement with the county, Combs' failure to explain how he acquired title thereto is almost conclusive to our minds of his utter inability to do so.

The above conclusions make it obvious that the lower court committed no error in its finding of fact on this point, and the judgment is therefore affirmed as to this item.

3-b. It is our opinion that the appellant is correct in its contention on this point. The county, in its petition, sought judgment against Combs and the surety for $885.29 as due on the 1930 road sinking fund, whereas the judgment in the case permits the county to recover $1,234 or $348.71 more than the amount sued for. As the county set out and sued for a definite amount in its petition, its pleading will not support a judgment for more than that amount. In this particular therefore the judgment of the lower court was in error.

3-c. This contention of appellant also presents a pure question of fact arising as follows: Combs presented to the fiscal court tax bills remaining in his hands for the year 1931, on which the taxes had not been paid, and received credit by the amount of these tax bills in his report of land sold for taxes, purchased by the state and county, and in his settlement for the year 1931 was given credit for these uncollected tax receipts. This issue of fact deals with whether or not Combs received credit on land sold for taxes for taxes owing the county by the Carbreath Gas Company which had been collected

by Combs. The total amount of this company's tax receipt was $2,681.13, of which approximately $60 was for the library tax, above referred to, which this company would not pay on the ground that it was illegal. It paid Combs $2,241, all of its taxes except the illegal library tax and some other disputed item and took receipt therefor, but the county claims that Combs received credit for the taxes due it on this receipt in his land sales for taxes.

Combs states that he turned the uncollected tax receipts in to the county clerk for the purpose of making up this settlement and that at that time the tax receipt of the Carbreath Gas Company was in the book, but that there was a pencil memorandum on it showing that the company had paid $2,241 on its taxes. A copy of this receipt is introduced in evidence and bears a pencil memorandum thereon, "Paid to Lee Combs, $2,241." The county clerk states that she made the list of land sold for taxes from these tax receipts and that she believes this memorandum was on the receipt when she made this list, thereby leaving the inference that the amount due the county was not included as a credit in the land sold for taxes. Combs testifies definitely it was not. In the record of land sold for taxes, the clerk stated that there was an entry that showed that Carbreath Gas Company's property was sold for taxes for a total of $2,681.13, less release.

This testimony, if undenied and unexplained, would amply justify the conclusion that Combs did not receive credit for the amount of tax collected by him, and the rather natural inference to be drawn from the language appearing on the land sale for taxes book, "$2,681.13, less release," is that the release means the $2,241, which was paid Combs by the company and which he says he was not given credit for and which amount, according to the clerk's recollection, appeared as a credit on the tax receipt.

However, it is definitely established by the testimony of Grannis Bach that he paid this $2,241 to Combs for the Carbreath Gas Company and that thereafter its land was advertised for sale for the full amount of its tax receipt, namely, $2,681.13. It is not denied by Combs that the sale was advertised for the full amount, but he states that he only sold the land for the balance of approximately $60. After he ascertained from examina-

tion of the land sale book that the property of this company was reported as sold for taxes, Mr. Bach was much exercised about the matter and called the attention of the county clerk to it. The clerk looked up the original tax bill at that time and Mr. Bach states positively that there was no notation on the tax bill showing payment of the $2,241. He states unequivocally that after the sale of this property was entered in the sheriff's land sale book he saw the original tax receipt and that it did not have the notation on it which Combs said he had placed on it before delivering to the clerk, and also that it did not at that time have on it the notation, "See release order."

It is explained in the testimony that this notation, "See release order," was placed on the tax receipt sometime later because the company obtained a release in the county court for a portion of its taxes covered by this receipt.

F. C. Schneider states that he made up the settlement for 1931 for the county and that, in doing so, he made up a list of the tax bills and amounts thereof for which Combs received credit on the 1931 land sales; that at the time of his testimony he had in his hands the original work sheet used in making up this list of land sold for taxes and that this work sheet shows that Combs was given credit for the taxes paid by the company on that tax bill; that the valuation of $145,250 (assessed valuation of the company's property) was included in the total for which Combs received credit.

We are convinced that Combs did receive credit for this sum on his land sold for taxes reported and that this should not have been allowed and that the judgment of the chancellor was correct in not allowing it as a credit. We are all the more fortified in our conclusions on this point by the evidence of a large number of witnesses who paid a portion of their taxes, out did not receive the tax bills, and who later found their land advertised or sold, or both, for the full amount of the tax bill. The judgment of the lower court is therefore affirmed on this point.

3-d. Appellant insists that the lower court erred in four instances in disallowing credits to which Combs was entitled on the 1932 general fund which we will take up separately under the designated numbers and letters in the opinion above.

**3-d-1.** This credit of $995.89 which the court disallowed to Combs involves the same state of facts as subdivision 3-a above and, in accordance with the views therein expressed, we are of the opinion that the chancellor committed no error in his finding that these warrants did not belong to Combs, were not owing by the county, and that Cockrell, the former sheriff, had been given credit for them in his settlement with the county. The judgment is therefore affirmed in this particular.

**3-d-2.** Appellant insists most earnestly that the court erred in allowing a credit of $1,657.28 which had been allowed to Combs in his purported settlements for the reason that it was interest allowed on warrants that had not been stamped by the treasurer of the county, "No funds." The case of Tincher v. Commonwealth, 208 Ky. 661, 271 S. W. 1066, is cited as authority that the Commonwealth in a proper state of case is liable for interest on a claim due and owing by it even though no warrant had been issued, and we do not disagree with this principle. We think, however, that a different situation is presented in this case and that the judgment of the court was correct in this particular for other reasons.

It is shown by a large number of witnesses in this case that Combs was trafficking in county warrants. We mean by this that it is perfectly evident that he was purchasing, or having purchased by members of his family, county warrants at a large discount. The evidence on this point is rather lengthy and we do not feel that it is necessary to enter into a full discussion of it. We are perfectly satisfied that Combs was doing this on a large scale. Instead of paying the money over to the county treasurer, he accumulated by different means thousands of dollars of county warrants, in violation of law, and used these warrants in purported settlements with the fiscal court to obtain credit on taxes collected by him and owing to the county. In almost every instance where the proof showed some person sold a warrant to a member of Combs' family, such warrant turned up in Combs' settlements and he was given credit therefor by the fiscal court, thereby bringing about a violation of law both upon the part of Combs and the fiscal court. There is no question in our mind but that this practice helped to bring about and produce a most deplorable situation in the county and helped to aggravate

to a great degree the existing bad state of county finances.

To such an extent did Combs indulge in this practice that a suit was brought against him in the circuit court and an injunction obtained against him enjoining him from doing so. That case was appealed to this court and the judgment was affirmed but thereafter Combs calmly proceeded to ignore the judgment in that case and continued to engage in the practice.

The argument is made for appellant that Combs, in taking these county warrants, was acting largely under orders and directions of the county judge and members of the fiscal court given to him orally and that thereby he was justified in this course of conduct, but we give but little consideration to this line of argument. A plain and manifest duty was imposed on Combs to turn this money over to the county treasurer and both he and the fiscal court knew beyond any question they were engaged in an illegal course of conduct in permitting him to satisfy these claims against the county or to purchase these warrants and both knew that a violation of the law was taking place in permitting Combs to use these warrants in his tax settlements. It is not necessary to dwell on the evils capable of being produced and brought about by such a manifest disregard of plain provisions of statutory law. These evils did exist to the fullest extent in this county.

In the case of Breathitt County v. Cockrell, 250 Ky. 743, 63 S. W. (2d) 920, 92 A. L. R. 626, which was the case above referred to in which Combs was enjoined from trafficking in county warrants, a full discussion is given by the court as to the sheriff's duties in the handling of public funds and it is held that Combs was a trustee of the taxes collected by him for the county. The evidence in this case makes it plain that he was using this county money in this trafficking with county warrants, thereby making a profit to himself at the expense of the county and its indivdual citizens. This he was not entitled to do and we see no justice or reason in holding that he should be permitted to charge interest on these warrants to the county in his settlement. If he made any profit the county should be entitled thereto and as he was using the county money in the purchase of these warrants he is certainly not entitled to charge the county interest on its own money. We are there-

fore of the opinion that the lower court did not commit an error in disallowing him a credit for this item. Our conclusions on this question have considerable bearing on one of the main features of this case to be discussed hereafter.

3-d-3. Appellant claims the court erred in rejecting this credit of $986.34 in warrants turned over by Combs in his settlement for the year 1932, the reason assigned by the lower court being that this was an overpayment on this settlement and the sheriff should not be credited with an overpayment on a general settlement of his accounts covering 1930, 1931 and 1932, because he was illegally trafficking in warrants.

As above indicated, there is no doubt that this illegal trafficking was taking place and there is much reason behind the contention of the county that this credit should not have been allowed. However, as we are treating this action as an action for a general accounting between the county and the sheriff for these three years and, as purported settlements were made between the sheriff and the fiscal court, although not being legal settlements, in which credit was allowed to the sheriff for these warrants and as no contention is made by the county that any one of these warrants was not due and owing, we have come to the conclusion, although not without much hesitation, to allow this as a credit in this action. It must not be forgotten that this is an action against this surety for a money judgment and we are constrained to believe that this surety should be allowed to use these warrants as a set-off against the county's demands. We take this sum into consideration in computing the amount due the general fund for 1933.

3-d-4. In the purported settlement made by Combs with the fiscal court for the year 1932, Combs received credit for exonerations in the sum of $5,247.79.

It is alleged in the petition and not denied that the total valuation of exonerations was $349,853 and that on this valuation Combs was given credit for $5,247.79. This shows that the exonerations were figured at $1.50 instead of 50 cents as they should have been. It was merely a mathematical error. While this was not a legal settlement and this is not an action to surcharge same, yet the allegations with reference thereto are not denied and they show, as a matter of law, an overcredit of $3,-

498.53 on this account and we are of the opinion that the court committed no error in deducting this amount from credits to which Combs was entitled.

(4) The question raised by appellant here is that the lower court erred in failing to give it credit on the judgment for county warrants turned in by Combs in his settlement for the years 1932 and 1933 in excess of his liability for those particular years and we have heretofore under 3-d-3 given our conclusions with reference to this matter in connection with the $986.34 overpayment in warrants for the year 1932. We there indicated that as the fiscal court accepted these warrants in settlement and as this was an action for a money judgment against the surety we will permit this credit to be given. With reference to a claimed overpayment in warrants by Combs on the 1933 settlement, we would be inclined to apply a different rule, but such course will not be necessary as we have determined that there was no overpayment on the 1933 settlement but that, as a matter of fact, the amounts owing by Combs for this year were not accounted for by a considerable sum. The question of the balance due by Combs on the 1933 settlement, judgment for which was denied by the lower court, will be taken up and discussed under the first question raised by appellees on their cross-appeal.

(5) We have come to the conclusion that the county is not estopped from suing the surety on the sheriff's bonds for the taxable years 1930, 1931 and 1932. Appellant contends that the county should be so estopped, because, while settlements were made for these years, they were not recorded as required by law and not preserved intact by the fiscal court and because it accepted payment in full satisfaction of Combs' liability. It seems to us that it was as much the duty of Combs as it was of the county to see that these settlements were filed and recorded. He was as much interested therein and under an equal duty to see to the correct and legal manner of making these settlements. The county is not estopped from suing on these purported settlements by reason of having accepted payment in full satisfaction of Combs' liability. No controversy or lawsuit existed between the county and the sheriff and Combs' payment of a less amount than that due the county, under these circumstances, does not operate as a bar to the county recovering what is due it in this action which was

treated, and progressed as, an action for a general accounting between the county and the sheriff.

(6) Appellant's contention that the petition in action No. 2122 covering the year 1933 is demurrable because not containing necessary allegations to surcharge the settlement seems to us without merit. It is true that the county does not pray in this petition that the settlement be surcharged, but it sets out the settlement showing a balance of $21,037.27 to be due, as shown by the settlement, and prays judgment for this amount and, were we to follow the strict letter of the law and not treat the warrants accepted by the fiscal court as entitling the sheriff's surety to use of them as an equitable set-off, the county would be entitled practically to the full amount of the relief prayed for. Nor has our attention been called to any authority holding that it is necessary to allege in a petition of this character that the fiscal court had by order directed the county attorney or some other attorney to bring the action. Of course, if some taxpayer were suing, it would be necessary for him to make the proper showing of a demand on the fiscal court to sue and a refusal by it, but this action progressed over a long period of time with no attempt made to show that it was unauthorized. We are treating it as an action for the balance shown to be due by the settlement and recognizing the right of Combs and his surety to surcharge the settlement under the allegations made by them to the extent that the evidence might show a surcharge proper.

We might add that there was read in evidence an order of the fiscal court employing F. C. Schneider Company and Bruce and Bullitt to prosecute actions against Lee Combs, sheriff, for the taxable years 1930 and 1931, and on December 30, 1933, an order was made extending the terms of the previous order or contract. It is apparent from these two orders, although badly and informally drawn, that the fiscal court had authorized the action.

(7) Appellant contends that the court was in error in disallowing a credit of $654.41 allowed Combs by order of the fiscal court on June 15, 1933, but we have come to the conclusion that appellant is not correct on this contention, although our conclusion is based on different reasons from those assigned by the commissioner and the trial court. This credit was disallowed in the

lower court because there was an overpayment of warrants by the sheriff, that court being of the opinion that no credit should be given for overpayment in warrants.

Appellant puts in evidence a certified copy of the order of the fiscal court of July 15 and treats this as an order allowing $654.41 to Combs as a credit on his 1933 general fund but an examination of that order shows that this is not correct. By that order Combs was allowed a claim of this amount in lieu of a large number of small warrants turned in by him and a new warrant in this amount was ordered issued to him, payable out of the 1933 general fund levy. However, it will be observed that this warrant of $654.41 issued to Combs turned up in, and was a part of, a large list of warrants aggregating $21,000.02 which were accepted by the fiscal court as credits on the general fund settlement for the year 1933. This warrant turned up as warrant No. 15,883 and is included in that list. As we have decided that the appellant is to be credited by valid warrants composing most of this $21,000.02 as will be shown later in the opinion in the determination of the correct amount due on the settlement for the year 1933, it is apparent that this amount should not also be allowed as a separate credit because to do so would be a duplication of credits on this item.

7-b. Appellant here contends that Combs overpaid the county by county warrants which were by order of the fiscal court accepted on October 3, 1933 and December 30, 1933, to be applied as credits on his settlement for the year 1933 and should have been credited in the judgment with this overpayment, but as we have come to the conclusion that there was no overpayment for this year and that on the contrary, Combs is still indebted to the county for that year, it is not necessary to go further into this question. As indicated above, our conclusion on the correct amount due under the settlement for the year 1933 will be shown under questions raised by appellees on their cross-appeal.

7-c. As to the item of $266 for building voting houses, for which Combs says he presented a claim to the fiscal court, we are of the opinion that the court committed no error in this line. The surety may be subrogated to any claim Combs might have against the

county thereby, but may not set that off here against this tax liability.

7-d. Appellant now concedes the correctness of the action of the lower court in disallowing $701.00 which Combs claimed as a credit because the county owed him that amount for advertising land sales for taxes. This question was decided by this court in the case of Knox County v. Lewis' Adm'r, 253 Ky. 652, 69 S. W. (2d) 1000. It is therefore not necessary to discuss this item.

7-e. In this action Combs and his sureties set up the fact that he holds $1,000 in interest coupons on county funding bonds and claims credit therefor on the 1933 settlement. The lower court refused to allow this credit and we are of the opinion that this was correct. These taxes should have been paid to the county treasurer by the sheriff in money at the times specified in the statute and we have heretofore in this opinion determined that, on equitable principles, the surety was entitled to have set off on this money judgment against it county warrants actually accepted by the fiscal court as credits on these taxes. In doing so, with considerable misgivings, we feel that we have been exceedingly liberal with this surety. We do not care to extend this principle so far as to permit a setoff of county obligations not accepted by the fiscal court on the settlement. The surety may be subrogated to Combs' rights in this $1,000, to be paid as other county obligations are being paid.

(8) We are of the opinion that the appellant is correct that the county was not entitled to recover penalties in this action. The county sued for the amount due as shown by the settlement. The petition relying on the settlement, contains no allegations sufficient to support a judgment for penalties. The presumption is that penalties due from the sheriff were included in the settlement. If he owed penalties at the time of making the settlement, by reason of not having paid over money in his hands when due, those penalties should have been charged in the settlement. This is an action for the amount due as shown by the settlement and not to surcharge the settlement.

(9) As indicated earlier in this opinion, the lower court sustained the demurrer of appellees, S. L. Combs, Ervine Turner, Lewis Combs and J. S. Hollon, sureties on the sheriff's official bond, to the cross-petition of appellant, against them seeking contribution from these

sureties on the loss sustained by it and appellant insists that these sureties on the official bond are jointly liable with it for this loss.

This presents a question which has not heretofore been decided by this court, although, in a number of opinions, the court has used language apparently broad enough to be construed as authority sustaining appellant's contention. For example, in the cases of United States Fidelity & Deposit Company of Maryland v. Brown, 230 Ky. 534, 20 S. W. (2d) 284; United States Fidelity & Guaranty Company v. Salyer, 131 Ky. 527, 115 S. W. 767; and Shipp v. Bradley, 210 Ky. 51, 275 S. W. 1, the court gives utterance to language which might be construed as authority that sureties on the official bond of the sheriff are jointly liable for defalcation of the sheriff along with sureties on the revenue bonds, but a careful examination of those cases discloses that this direct question was not involved. In the case of United States Fidelity & Deposit Company of Maryland v. Brown, supra, where the strongest expressions along this line are indulged in, the court in that opinion said [page 285], "The official bond required by section 4556 was not executed by the appellant, and is not involved in this case." It is evident therefore that this case cannot be considered as authority on this point.

Three types of bonds are required to be given by a sheriff and, at least as far back as 1898, the bond required of a sheriff under Section 4556, Kentucky Statutes, was designated as the "official bond;" that under Section 4133, his "general revenue bond," and that under Section 1884, a "special county levy bond." These descriptive terms were applied to the bonds in the case of Fidelity & Deposit Company of Maryland v. Commonwealth, 104 Ky. 579, 47 S. W. 579, 49 S. W. 467, 20 Ky. Law Rep. 788.

In the case of Anderson et al. v. Thompson et al., 10 Bush 132, 133, the court held that the surety on the official bond of the sheriff was not liable for the defalcation of the sheriff in his tax collections, the court saying:

"We entertain no doubt of the right of the sureties on the bond executed at the time the sheriff is inducted into office to claim exemption from liability

on account of any default of his touching his duties as collector of the public revenues or of the county levy or public dues of his county. As matter of law the sheriff has no right to collect these revenues and levies until he has executed the bonds required, and upon failure to give either bond he may be removed from office."

The next case considering the matter of liability of the surety on the sheriff's official bond for taxes collected was Kenton County v. Lowe etc., 91 Ky. 367, 16 S. W. 82, 13 Ky. Law Rep. 97, which held that where the sheriff had not executed the revenue bonds required by law, the surety on the official bond of the sheriff was liable by reason of a statutory provision that:

"If for any cause the sheriff shall fail to execute the bond provided for in this chapter [27] and the county court failing to appoint a collector, the sheriff shall, in virtue of his office, proceed to collect the county levy, then he and his sureties shall in all respects, and to all intents and purposes, be responsible upon his official bond." Gen. St. 1888, c. 27, art. 3, sec. 9.

By these two decisions it appears to have been definitely established that the surety on the sheriff's official bond was not liable for revenue collections of the sheriff when the sheriff had also executed the revenue bonds required by law, and we have had no case cited overruling the doctrine announced in those cases.

However, appellant relies largely of course, on that portion of Section 4134, Kentucky Statutes, which provides:

"The county court may require the sheriff to give an additional bond or bonds, with good surety, to be approved by the county court whenever it may deem the interest of the state, or county demands; and the sureties on all the bonds executed by the sheriff shall be jointly and severally liable for any default of the sheriff during the year in which said bond may be executed, whether the liability accrues before or after the execution of such bond or bonds."

If this were a general section of the statutes standing by itself, there would be much logic and reason in its contention, but the above quoted section appears as

a part of Chapter 103 of the Revenue Act of 1892 and is contained in Article 7 of that chapter, entitled, "Collection of Revenue." Section 5 of that article provides the form of the bond to be given by the sheriff or collector and section 6, immediately following the form of the bond, is the language of Section 4134, Kentucky Statutes, above quoted.

This constrains us to believe that the bonds referred to and contemplated in section 6 of that article were bonds of the kind and character provided in section 5, and that the Legislature did not on the passage of this Act have in mind official bonds of the sheriff; that this quoted language of the statute did not intend, and does not mean, that sureties on the official bond of the sheriff shall be jointly and severally liable for any default of the sheriff with the surety on the revenue bonds. We are therefore of the opinion that the lower court was correct in its ruling in sustaining the demurrer of these appellees to appellant's cross-petition and the judgment is therefore affirmed on the appeal taken by this appellant against these appellees.

We will now take up in order the questions raised by appellee Breathitt County on its cross-appeal, the first of which is that the court erred in failing to give judgment for the county for $4,532.49 on the 1933 general fund. The commissioner made his finding, which was confirmed by the court, the effect thereof being incorporated in the judgment, that Combs should be disallowed as credits on the 1932 general fund the three sums of $995.89, $1,657.28 and $3,498.53, and we have earlier in this opinion determined that these findings were correct. However, the commissioner's finding was that Combs had turned over to the fiscal court for credit on this fund $7,138.04 in warrants in excess of amounts due by the purported settlement for which Combs was entitled to credit, and that therefore Breathitt County could not recover these three sums as there was an overpayment after charging Combs with everything.

In making his figures on the 1933 general fund, the commissioner found that Combs had overpaid this fund by warrants turned over to, and accepted by, the fiscal court. He overlooked, however, that there was included in the warrants turned over to the fiscal court on the 1933 general fund this warrant of $7,138.04 given to Combs by the fiscal court for the overpayment in war-

rants on the 1932 general fund. As our conclusions heretofore given show that the commissioner was correct in charging Combs with the three sums of $995.89, $1,657.28 and $3,498.53, it is apparent that the total of these three sums, or $6,151.70, must be deducted from the amount of the warrant of $7,138.04 issued to Combs by the county as an overpayment on this general fund for 1932, in order to prevent a duplication of credits. When this is done, it appears to us that the amount properly due under the 1933 settlement, is correctly arrived at by the following figures:

|  | Credits | Debits |
|---|---|---|
| Debits as shown by settlement ... |  | $33,623 28 |
| Credits as shown by settlement .. | $12,586.01 |  |
| Credit county claims accepted by fiscal court order of Oct. 3, 1933 ..................... | 21,000.02 |  |
| Credit county claims accepted by fiscal court order of Dec. 30, 1933 ..................... | 4,487.23 |  |
| Debit warrant of $7,138.04 and interest erroneously issued, constituting a part of credit of $21,000.02 above .......... |  | 7,494.94 |
| Credit legal part of last mentioned warrant being $986.34, plus interest .............. | 1,045.32 |  |
| Debit two warrants of $776 and $951 and interest, included in warrants accepted October 3, 1933, issued for advertising land sales ................ |  | 1,841.80 |
|  | 39,118.58 |  |
| Balance due county ............ | 3,841.44 |  |
|  | $42,960.02 | $42,960.02 |

As to the item of $1,841.80, entered in the above table as a debit, we might add that appellant concedes that Combs was not entitled to credit for amounts allowed him by the fiscal court for advertising land sales for taxes and it appears in the evidence that Warrant No. 15,888 for $776 and Warrant No. 15,434 for $951, together with interest on both of the warrants, an aggregate total of $1,841.80, were included in the $21,-

000.02, which the fiscal court accepted in warrants as a credit by the above mentioned order of October 3, 1933.

We are therefore of the opinion that the county was entitled to recover judgment on the 1933 general fund for this sum of $3,841.44, and the judgment is therefore reversed to this extent on the cross-appeal of the county.

The second question raised by the appellee on this cross-appeal is that the court erred in giving Combs credit on his settlements for the years 1930, 1931 and 1932 for warrants which were illegal because not authorized by an order of the fiscal court or county court. We think appellee is correct in this contention and that every consideration requires us to sustain it.

A large number of warrants were read into the record by the county clerk, which were used by Combs in his settlements with the fiscal court for the years named and by which he was given credit on his tax collections. These warrants aggregating $2,860.31, were never authorized by the fiscal court and, as we interpret the evidence, there was no order of any kind allowing these claims. Possibly they had been allowed orally by the fiscal court, but according to the clerk there is no mention of these claims either on the fiscal court or county court order book. There is no way of knowing whether or not these claims were valid claims against the county, and the fiscal court certainly went beyond all bounds when it accepted such warrants in satisfaction of Combs' liability to the county for taxes.

We feel that we have been exceedingly liberal with the surety on this sheriff's bond in permitting legal warrants, which had been isued by the court, to be credited on the sheriff's tax liabilities and we do not desire or expect this opinion to be considered as recognizing the legality and propriety of such practices. Our reasons for going this far are indicated above and we do not feel justified in extending the principle announced so far as to give any effect whatsoever as to the action of the fiscal court in crediting on a sheriff's tax liability warrants which were never issued pursuant to any order of court.

When a claim is properly presented to the fiscal court, it is presumed to investigate the claim and to allow it if it is proper, but it is apparent that when a large

number of unauthorized warrants are presented to the court after a lapse of several years and allowed en masse as a credit on the sheriff's settlement, no proper consideration could have been given thereto by the court. Many considerations demand that the amount of these illegal warrants be eliminated from the credits given the sheriff in ascertaining the amount due by him. This leaves the door open to appellant who is chargeable with the amount of these illegal warrants to take such legal steps as it sees fit in order to obtain the advantage of these supposed warrants and secure itself whatever rights it may be entitled to thereunder. The judgment is therefore reversed in this particular with directions to charge appellant with this sum of $2,860.31 in computing its ultimate liability.

The third contention raised by the county on its cross-appeal is that the county is entitled to any profit made by Combs on the purchase of these warrants by which he was given credit in his settlements and we have heretofore indicated that we agree with this contention. This question was decided in the case of Breathitt County v. Cockrell, Jailer, supra, and needs no further discussion. The county takes the position that the proper action on the part of this court would be to refer the case back to the trial court with directions to require an accounting as to this profit, but states, however, that it recognizes that this would be a futile gesture and we construe this as evidencing no desire on the part of the county that this be done. We have taken care of this situation as best we can under the proof introduced in this case by our decision, indicated above, disallowing the item of $1,657.28 interest on warrants turned in on purported settlements.

We have answered all questions raised on the different appeals involved in this case, and in doing so, have confined ourselves within narrow limits. Numerous questions have been presented, which, if they were unaccompanied by other questions, we would have preferred to answer and discuss at greater length, but to give to each question raised in this case the amount of space ordinarily given would extend this opinion to enormous lengths, which we do not feel justified in doing.

We have determined not to act as auditors in this case and attempt to direct the exact amount for which

judgment should be rendered, but to return the case to the trial court with directions to ascertain the exact amount of the judgment in accordance with the rulings herein given, which is accordingly ordered to be done.

The judgment is reversed in part and affirmed in part on the original appeal by appellant against the county; is affirmed on the appeal of appellant against Ervine Turner and other sureties on Combs' official bond; is reversed in part and affirmed in part on the cross-appeal of the county with directions to the trial court to enter judgment in accordance with the views expressed in this opinion.