## City of Newport, Kentucky, Ex Parte.

(Decided December 16, 1910.)

## Appeal from Campbell Circuit Court.

1. Cities—Ordinances—Bonds for Street Improvement—Submission to Vote of City—Validity of Ordinance.—By an ordinance duly and regularly passed by the general council, and approved by the mayor. the city of Newport provided for the issue and sale of $100,000 worth of its bonds for street improvement. purposes. Prior to the passage of this ordinance, two-thirds of the voters voting at an election held for that purpose, in compliance with section 157 of the Constitution, voted in favor of the issue of these bonds. Thereafter a question arose as to the right of the city to issue that amount of bonds, the claim being made that it would increase the city's indebtedness beyond the constitutional limit. In a suit instituted and submitted to the circuit judge, he held the ordinance valid, and the city appeals. Held:—

2. Cities of the second class are not permitted to incur an indebtedness, including existing indebtedness, exceeding in the aggregate ten per cent of the assessment next before the last assessment, previous to incurring the indebtedness. It is shown that the assessment for the city for the year 1909 was $13,-209,357  When the ordinance was passed, the limit which the city could incur, therefore, was $1,320,935.70. At that date the indebtedness of the city after deducting the amounts in the sinking and sewer funds, is shown to have been $1,160,977.54. At that time the indebtedness of the Board of Education was $95,000. If the indebtedness of the Board of Education is to be treated as an indebtedness of the city, the city would not be authorized to incur an additional indebtedness in excess of $64,958.15, for this amount would bring its total indebtedness up to ten per cent of the assessment of the previous year. Held, while it is true that the indebtedness of the Board of Education must be finally met by a tax levied upon all of the property in the city, it is equally true that its bonded indebted-

ness is secured by a lien upon the school property. Evidently the Legislature did not place this construction upon section 158 of the Constitution, but in making provision to meet the requirements of section 183 of the Constitution it authorized the school boards of cities of the second class to incur an indebtedness of not exceeding two per cent of the taxable property of the district, if the needs of the school so required, without regard to the city's financial condition.    This  was the plain legislative intent, and there being no constitutional provision denying to the Legislature this right, the act should be upheld.

C. T. BAKER, attorney for the city.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

By an ordinance, duly and regularly passed by the general council and approved by its mayor, the city of Newport provided for the issue and sale of $100,000 worth of its bonds for street improvement purposes. Prior to the passage of this ordinance two-thirds of the voters voting at an election held for that purpose, in compliance with section 157 of the Constitution, voted in favor of the issue of these bonds.    Thereafter a question arose as to the right of the city to issue that amount of bonds, the claim being made that it would increase the city's indebtedness beyond the constitutional limit. Suit was accordingly brought to test the validity of the ordinance.    The case was prepared and submitted to the circuit judge for judgment, and, upon consideration, he held the ordinance valid, and the city appeals.

The only question affecting the validity of this ordinance is whether a certain indebtedness of the board of education of the city of Newport is to be regarded and treated as an indebtedness of the city.    If it is, then the ordinance does in fact provide for an indebtedness in excess of that which the Constitution authorizes; whereas, if the indebtedness of the Board of Education is not to be considered and treated as a part of the indebtedness of the city, then the indebtedness provided for is within the Constitutional limitation, and the ordinance is valid.

Cities of the second class are not permitted to incur an indebtedness, including existing indebtedness, exceeding in the aggregate ten per cent. of the assessment next before the last assessment previous to incurring

the indebtedness. It is shown that the assessment for the city for the year 1909 was $13,209,357. When the ordinance was passed, the limit of indebtedness which the city could incur, therefore, was $1,320,935.70. At that date the indebtedness of the city, after deducting the amounts in the sinking and sewer funds, is shown to have been $1,160,977.54. At that time the indebtedness of the Board of Education was $95,000. If the indebtedness of the Board of Education is to be treated as an indebtedness of the city, the city would not be authorized to incur an additional indebtedness in excess of $64,959.15, for this amount would bring its total indebtedness up to ten per cent. of the assessment of the previous year.

In Brown v. Board of Education of the City of Newport, 22 Rep., 483, this court held that, under section 157 of the Constitution, the Board of Education had not authority to become indebted beyond the income for any one year without the consent of two-thirds of the legal voters of the city. And it is therefore argued, that as the Board of Education could not, in any one year, incur an indebtedness beyond a certain amount, except by a vote of the people interested, the indebtedness of the Board must be treated as a part of the indebtedness of the city.

This is not a necessary inference. The question here involved was not raised in that case; nor has it been passed upon by this court. But in Gray on Limitations of Taxing Power and Public Indebtedness, Section 2148, the rule, supported by the weight of authority in other States, is said to be that "where two or more municipal corporations or political bodies are wholly or partly coincident in territory, they are nevertheless regarded as separate bodies for the purposes of constitutional debt limitations, unless the contrary is expressed in the Constitution. In reckoning the indebtedness of a county, the indebtedness of a city within its borders is not to be considered; in reckoning the indebtedness of a city the debt of an independent school district wholly or partly in the city limits is not to be considered; and vice versa."

In Campbell v. City of Indianapolis, 155 Ind., 186, the Supreme Court had under consideration the question as to whether or not the indebtedness of the school board of the City of Indianapolis should be taken into account as a part of the city's indebtedness in determining whether or not the constitutional debt limit of the city had been reached. It was held that the debts of the civil city of

Indianapolis and those of its school corporation are not to be aggregated to determine the debt limit to which either is entitled under the Constitution, but that the right or power of each of these corporations to contract an indebtedness not in excess of the limit fixed by the Constitution is affected only by its own existing debts. A similar conclusion was reached by the Supreme Court of Illinois in Wilson v. Board, et al., 133 Ill... 433. To the same effect are State v. Common Council, et al., 96 Wis., 73; Board, et al. v. National Life Ins. Co., 94 Fed. 324; Todd v. City of Laurens (S. C.), 26 S. E. 682.

While it is true that the indebtedness of the Board of Education must be finally met by a tax levied upon all of the property in the city, it is equally true that its bonded indebtedness is secured by a lien upon the school property. The legislature has seen fit to make the Board of Education in cities of the second class an independent and distinct municipal corporation. Board of Education of the City of Bowling Green v. Townsend, 130 S. W. 1105; Brown vs. Board of Education of City of Newport, 22 Reporter, 483. An examination of the acts creating said boards discloses the fact that they are given more independent powers than have the boards of education in cities of any other class. They have ample authority to do everything that is necessary to control and maintain the schools in said cities; full power to create indebtedness and issue bonds within certain restrictions and limitations; and to pledge any property that may be acquired for school purposes, together with its equipment, to secure said indebtedness. In these matters they have exclusive control, free from any supervision or direction on the part of the general council. There is no constitutional restriction upon the legislature denying it the right to create school boards, giving to them these general powers. On the contrary, section 183 of the Constitution specially directs the legislature to provide by proper legislation for an efficient system of common schools. Under this authority the legislature has created the school board as an independent and distinct municipal corporation, exercising its rights and powers throughout the city limits.

The opinion in the case of the City Council of Richmond vs. Powell, 16 Reporter 174, relied upon as an authority by the city, is not in point, for the reason that Richmond is a city of the fourth class, and the power and authority of school boards in cities of the fourth class is

entirely unlike that which may be exercised by school boards in cities of the second class. And further, the bonds referred to in that case were issued by the city itself, and, of course, there could be no question but that the city would be liable for its bond issue, no matter for what purpose the indebtedness may have been created. The bonds evidencing the indebtedness of the School Board in this case were issued, not by the city, but by the School Board. Hence, the case of the City Council of Richmond vs. Powell throws no light upon the question involved in this case.

In some jurisdictions where this question has arisen, school boards are given the right to make the tax levies for school purposes, while in this State, in cities of the second class, the Board does not have such power. But it is given the right to determine the needs of the school for the current year, and to require the council to make a levy to meet these demands. No substantial distinction can be drawn between an act which gives to the Board the right to levy the tax and an act which gives it the right to require it to be done. The result is the same. In creating the School Board an independent corporation, the Legislature invested it with certain rights and powers, among them being the power to determine the amount of money necessary to meet the school needs during any one year, and, under certain contingencies and conditions to borrow money and pledge the school property to secure it. But this power is not limited; for we find that such board may not incur an indebtedness in excess of two per cent. of the taxable property of the district. If this indebtedness, so incurred, were to be treated as a part of the indebtedness of the city, why the necessity for placing any limitation as to amount? The provision of the Constitution quoted fixes the limit beyond which the city may go, and if the indebtedness of the School Board is to be treated as a part of the indebtedness of the city, and the city should have already reached its constitutional limit, then the power granted to the School Board, authorizing it to incur an indebtedness of two per cent., would be a nullity. The legislature, instead of granting it this right to incur an indebtedness of two per cent., should have granted this right, provided such indebtedness, when so incurred, would not increase the indebtedness of the city beyond its constitutional limit. Evidently the legislature did not place this construction

upon section 158 of the Constitution, but, in making provision to meet the requirements of section 183 of the Constitution, it authorized the school boards of cities of the second class to incur an indebtedness of not exceeding two per cent. of the taxable property of the district, if the needs of the school so required, without regard to the city's financial condition. This was the plain legislative intent, and there being no constitutional provision denying to the legislature this right, the act should be upheld.

The chancellor having reached this conclusion, his judgment is affirmed.