# City of Newport v. The Newport National Bank.

(Decided May 7, 1912.)

## Appeal from Campbell Circuit Court.

1. Bonds—Municipal—Validity—Suit to Test—Judgment—Conclusiveness.—In an ex parte proceeding by a city to test the validity of a bond issue, the judgment is conclusive not only of all questions actually raised and decided, but of all questions affecting the validity of the bonds which might have been raised and decided.

2. Cities—Second Class—Ordinances—Necessity for Publication—Section 3045 Kentucky Statutes—The provision of Section 3045, Kentucky Statutes, being a part of the charter of cities of the second class, that "the ordinances shall be published in like manner before they are in force" is mandatory, and an ordinance, unless published, is invalid.

3. Bonds—Cities of the Second Class—Authority to Issue—Chapter 106, Acts 1910—Chapter 107, Acts 1910—Proceeds—How Used.—By virtue of authority conferred by Chapter 106, Acts 1910, a city of the second class has power to issue street improvement bonds, which were authorized by vote of the people taken in 1909, but the proceeds of such bonds can be used only for the purposes mentioned in Section 3096, Chapter 107, Acts 1910.

OTTO WOLFF, City Solicitor for appellant.

L. J. CRAWFORD, L. J. CRAWFORD, JR., for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

The city of Newport, a municipal corporation of the second class, brought this action for specific performance against the Newport National Bank, to compel it to take and pay for, in accordance with its bid, an issue of street improvement bonds, amounting to $100,000. A demurrer was sustained to the petition as amended, and the petition and the amended petition were dismissed. From that judgment, the city appeals.

It appears from the petition and amended petition that on September 9, 1909, the Board of Aldermen of the city of Newport passed a resolution authorizing the submission to a vote of the people at the following November election, the question whether or not street improvement bonds to an amount not exceeding $100,000 should be issued for the purpose of reconstructing the streets and alleys of the city. The clerk of Camp-

bell County was directed to place the question upon the ballot, and the city clerk was directed to transmit to the county clerk a certified copy of the resolution. On September 16, 1909, the resolution was passed by the Board of Councilmen by the requisite vote. On September 18, 1909, the resolution was signed and approved by the Mayor. At the following November election, the question directed by the resolution to be submitted to the people was placed upon the ballot. On November 10, 1909, the election commissioners of Campbell County certified to the general council that the vote upon the $100,000 bond issue was as follows: Yes, 2,140; no, 845. The bond issue was carried, as more than two-thirds of those voting on the question voted in favor of it. On February 24, 1910, an ordinance providing for the issual of street improvement bonds by the city of Newport, Kentucky, for the sum of $100,000, was passed by the Board of Councilmen. On March 24, 1910, it was passed by the Board of Aldermen. On March 15, the ordinance was approved by the Mayor.

On September 28, 1910, the city of Newport instituted an ex parte proceeding in the Campbell Circuit Court for the purpose of testing the validity of the proposed bond issue. The proceedings were held valid by the trial court, and on appeal to this court, the judgment was affirmed. Ex parte Newport, 141 Ky., 329.

During the month of July, 1911, there was passed by the two boards of the General Council an ordinance repealing the ordinance approved March 15, 1910, providing for the issue of the bonds. The repealing ordinance was approved by the Mayor on July 13, 1911. During the same month, an ordinance providing for the issual of street improvement bonds for the city of Newport for the sum of $100,000, was passed by both boards of the General Council, and approved by the Mayor on July 13, 1911. By this ordinance, the bonds were to be of the denomination of $500, were to run for thirty years, and to bear interest at 4 per cent. payable semi-annually. The ordinance further provides for the levy of a tax on the assessed value of all property subject to taxation, sufficient to pay the interest on the bonds, and to create a sinking fund for the payment thereof within thirty years from the date of issue. Another provision directed that the proceeds of the bonds were to be used exclusively for the city's proportionate part of street improvements. There was a still further provision to the

effect that the Sinking Fund Commissioners were authorized and empowered to carry the ordinance into effect.

Thereafter, the Sinking Fund Commissioners advertised for bids. On August 23, 1911, it opened the bids, and the bid of the Newport National Bank, being the highest and best bid, was accepted. By its bid, the Newport National Bank agreed to pay a premium of $801.50, and accrued interest to date. The bank deposited a check for $5,000 as a guarantee of its good faith. Thereafter, the Sinking Fund Commissioners prepared the bonds and tendered them to the bank, which declined to accept and pay for them.

It further appears from the amended petition that the ordinance pursuant to which the bonds were issued was never published, the only publication of it being a reference to it in an abstract of the proceedings of the Board of Aldermen, and of the Board of Councilmen. In the abstract of the proceedings of the Board of Councilmen is the following: "An ordinance providing for the issual of $100,000 street improvement bonds of the city of Newport. Adopted." In the abstract of the proceedings of the Board of Aldermen is the following: "An ordinance providing for the issual of $100,000 street improvement bonds. Adopted."

We deem it unnecessary to discuss the authority of the city to issue bonds under the resolution of 1909, the subsequent vote, and the ordinance approved March 15, 1910, authorizing the bonds to be issued. While it is true that the only question actually considered by this court on the appeal of Ex parte Newport, 141 Ky., 329, was whether or not, in determining the amount of the indebtedness of the city, the indebtedness of the Board of Education should be included, yet the judgment entered therein was conclusive of the validity of all the proceedings therein involved. It will not do to say that a city may file a proceeding to test the validity of the bonds, and because only certain questions are raised and discussed, that the city, or any taxpayer, may thereafter attack the bonds upon other grounds not actually passed on and determined. If this were the rule, a judgment would never be res adjudicata. We are, therefore, of the opinion that the judgment in question is conclusive both upon the city and appellee, a taxpayer of the city, not only upon the questions actually decided, but upon all questions affecting the val-

idity of the bonds which might have been raised and decided. Home Construction Co. v. Duncan, 111 Ky., 914.

We shall proceed, therefore, to a discussion of the proceedings had by the General Council after the ordinance was approved March 15, 1910. As stated before, the ordinance under which appellee purchased the bonds was never published, but simply a reference was made to it in the abstract of the proceedings of the two boards of the General Council. Section 3045, Kentucky Statutes, which is a portion of the charters of cities of the second class, provides, in part, as follows:

"Each board shall keep an accurate journal of its proceedings, and immediately after adjournment, a fair abstract of its proceedings shall be published once in one or more daily newspapers, in different languages, if necessary. The ordinances shall be published in like manner before they are in force."

While there are many cases holding that charter provisions with reference to the publication of ordinances are merely directory, such is not the rule where publication is made a prerequisite to the ordinance's taking effect. In Bybee v. Smith, 22 R., 1684, an action brought to test the validity of an ordinance annexing territory to the city of Glasgow, a city of the fifth class, the court said:

"Section 3638, Kentucky Statutes, provides:  *  *  * 'Every ordinance shall be signed by the Mayor, attested by the clerk, and published at least once in a newspaper published in such city.    *  *  *  And shall be in force from and after such publication.'

"It is admitted a newspaper was published in the city, but it is averred in the petition that the ordinance annexing the proposed additional territory was never published. It follows from the foregoing that the ordinance annexing the territory in question, was not adopted, as required by law, and was void."

The same rule was announced in Muir's Admr. v. City of Bardstown, 27 R., 1150, where the court said:

"Whether the ordinances laying the levies for each of the years were published at the time does not appear. From this it is argued that they are invalid. If they were not in fact published, that seems to follow."

There is nothing in the case of Reed, &c. v. City of Louisville to conflict with the rule above announced. There the charter (section 2774, Kentucky Statutes) provided that "all ordinances shall be published in like

manner as the proceedings of the General Council.''
There was a further provision in the charter (section
2795, Kentucky Statutes) which provided that ''Except
a resolution to adjourn, every proposed ordinance or
general resolution which has passed the General Coun-
cil, shall be presented to the Mayor, and if he approves
it he shall sign it, and then it shall be obligatory,'' etc.
As section 2774 did not provide for a publication of the
ordinances before they were in full force and effect, and
as section 2795 provided that they should become obli-
gatory upon their passage and approval by the Mayor,
the court held that publication was not necessary in
order to render the ordinance valid.

The plain meaning of the language of section 3045,
to the effect that the ordinances shall be published in
like manner before they are in force, is that they be
published ''once in one or more daily newspapers, in
different languages if necessary.'' It was not the pur-
pose of the Legislature to provide that a mere abstract
of the ordinance should be published in the abstract
of the proceedings of the two boards of the General
Council. The purpose of publication is to give the tax-
payers notice of the provisions of the ordinance and of
the fact that it has become a law. A mere reference to
the fact in the proceedings of the two boards that a cer-
tain ordinance was adopted would not give notice of its
terms, and would not show that it had become a law.
The importance of the publication of an ordinance is
well illustrated in this case, for, by the ordinance in
question, it was proposed to incur an indebtedness of
$100,000, and issue bonds therefor. We conclude that
the provisions of section 3045, providing that all ordi-
nances shall be published in like manner before they are
in force, is mandatory, and that the ordinance, under
which appellee purchased the bonds, not having been
published, is invalid.

Another question raised by appellee on this ap-
peal, and which we deed it necessary to pass upon, is the
contention that the city of Newport no longer has the
power to issue bonds for its proportionate part of street
improvements. This contention is based on the fact that
section 3097 of the Kentucky Statutes, which was in
force at the time the vote on the bonds was taken, and
which authorized the issue of bonds to pay the city's
proportionate part of the cost of any improvements, was
omitted from section 3097 as amended by the act of 1910.

and on the further fact that under said act of 1910, the city is no longer liable for one-half the cost of street reconstruction. We conclude, however, that as the city had the right to issue the bonds under authority of the vote taken in 1909, and as the proceedings leading up to and subsequent to that vote were held to be valid in Ex parte Newport, supra, the city still has the authority, under chapter 106, Acts of 1910, to issue the bonds. Inasmuch, however, as the city, under chapter 1907, Acts of 1910, section 3096, is liable only for the cost of the improvement of intersections with other public ways, including one-half of the width of the street or alley, being improved, opposite other streets or alleys which run into, but do not cross the street or alley so being improved, and of that proportion of any street abutting upon property belonging to the city, the proceeds of the bonds can be expended for such purposes only.

As the city was authorized by the vote of 1909 to issue bonds, and still has the power under its charter to do so, the Commissioners of the city of Newport, upon whom devolve the legislative and executive powers of the city, may pass an ordinance providing for the issuance and sale of the bonds. In this connection, we deem it proper to say that the Commissioners, upon the passage, approval and publication of such an ordinance, may direct some one to advertise for bids, and have the bids reported to them. They must then accept the bid by proper resolution or ordinance.

The numerous other questions raised on this appeal we deem it unnecessary to discuss.

Judgment affirmed.

· MODIFIED AND EXTENDED OPINION BY WILLIAM ROGERS CLAY—COMMISSIONER.

In preparing our former opinion, our attention was not called to the following provision of section 3096, Acts of 1910:

"The general council of any city of the second class may provide by general ordinance, that such city shall pay part, and if so, what part of the cost of the improvement of streets, alleys and other public ways (excluding sidewalks) of such city."

This is a re-enactment of the law as it formerly was.

Under the old law the city of Newport enacted an ordinance providing that the city pay one-half of such improvements. Since the amendment the ordinance has been re-enacted.

Since under the law and ordinance in force when the bonds were voted, the proceeds of the bonds could be used for paying the city's one-half of the cost of street improvements, and since under the amendment of 1910 and the re-enactment of the ordinance, the same authority is conferred, it follows that the proceeds of the bonds may now be used for the same purpose.