## Shaw, et al. v. City of Mayfield, et al.

(Decided May 6, 1921).

### Appeal from Graves Circuit Court.

1. Municipal Corporations—Indebtedness for School Purposes.—A bonded indebtedness of a city of the fourth class created for school purposes in 1908 did not become the indebtedness of the school district created by chapter 14, Acts 1920, including the city and adjacent territory.

2. Municipal Corporations—Schools and School Districts—Apportionment of Debts.—The legislature having plenary power over school districts may provide for the division of the property and apportionment of debts when a portion of the territory and property of one district is transferred to the jurisdiction of another; but in the absence of such provision the rule of the common law obtains, and that rule leaves the property where it is found, and the debt on the original debtor.

HOLIFIELD & McDONALD for appellants.

W. J. WEBB for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal from a judgment dismissing appellants' petition to enjoin the board of education of Mayfield, Ky., from issuing and selling $80,000.00 of school improvement bonds. In disposing of a motion for a temporary injunction made before him while the action was pending below, Judge Thomas prepared an opinion which fully states the facts and the conclusions reached by the court upon its consideration of this appeal, and is now adopted as the opinion of the court. It is as follows:

"The only question involved in this case is whether the balance of $37,200.00 of a total bonded indebtedness of the city of Mayfield, voted at an election held in 1907 and sustained by this court in the case of Crosby, etc., v. Mayfield, 133 Ky. 215, was transferred and is chargeable to the present school district comprising the city of Mayfield and some adjacent territory. By chapter 14, Acts 1920, page 32, the boundaries of cities of the fourth class in this state with adjacent territory already, or which might in the future be added thereto were made single school districts to be governed by a board of education provided for in the act, and they were separated by the act from the municipalities forming parts of them and which municipalities had theretofore conducted, managed and operated the schools in such districts. Prior to that act the school districts as such could neither levy taxes nor issue bonds of the district. These duties, when necessary, were to be performed exclusively by the municipality and it was in the exercise of them that the $75,-000.00 of bonded indebtedness was voted and issued by the city of Mayfield in 1907. It was and is essentially the debt of the city and not that of the school district operated, controlled and managed by the city. Walsh v. City of Pineville, 152 Ky. 556. The $80,000.00 bonded indebtedness, authorized by the voters of the present school district at the regular election 1920, is a fraction less than 2 per cent. of the assessable property in the district and contravenes neither the Constitution nor the act above referred to, each of which authorizes the issual of such bonds to an amount not exceeding 2 per cent. of the taxable property in the district. If the balance of the $75,000.00 bonds, voted by the city of Mayfield, *ipso facto,* becomes the debt of the new district, then the indebtedness which it could create according to the facts appearing in the record would be the 2 per cent. of the taxable property ($81,962.40) less the $37,200.00 or the total sum of $44,762.40. The property within the city of Mayfield taxable for the balance of the indebtedness, voted in 1907, is property only of the white citizens of the city, since the school district for which the indebtedness was voted was one exclusively for white pupils; the colored people within the city at that time maintained their separate schools controlled by a separate board of education. The board of the present district as severed from the municipality has jurisdiction of and controls both white and col-

ored schools within the limits of the district, and both white and colored pupils share their *pro rata* of the taxes regardless of the fact as to whether they are collected from property owned by white people or owned by colored people. To charge the $37,200.00 to the district as at present created and managed, would allow one class of citizens (the colored people) to indirectly share the benefits of the $37,200.00 balance of indebtedness, and at the same time contribute nothing to its payment. In the same way it would require the property, which has since been added to the district, to discharge its proportion of that indebtedness when they had no voice in its creation.

"In 24 R. C. L., pages 566-567, the text says: 'The legislature, having plenary power over school districts, may provide for the division of the property and the apportionment of debts, when a portion of the territory and property of one district is transferred to the jurisdiction of another; but, in the absence of such provision, the rule of the common law obtains, and that rule leaves the property where it is found, and the debt on the original debtor.' In a note the case of Pass School District v. Hollywood City School District, 156 Cal. 416, and reported in 26 L. R. A. (N. S.) 485, is cited. The notes in the last volume referred to contain many cases supporting the text.

"With the law in this condition it is the conclusion of the members of the court who considered this motion that the unpaid portion of the $75,000.00 bonds issued by the city of Mayfield, continues as the debt of that city and was not assumed by the separation of the school district under the terms of the 1920 act referred to. We have been to some extent influenced in arriving at this conclusion because of the conditions above set forth and we would not at this time commit ourselves to the general proposition that such prior indebtedness would not under any circumstances be assumed by a school district when separated from the municipality if the separated district was identical in territory with its boundaries and the tax to extinguish that indebtedness was collectible upon all the property within the district creating it. Upon that question we refrain from expressing an opinion.

"It results therefore that the bonded indebtedness of $80,000.00, voted at the November election, 1920, is valid and the injunction was properly denied."

Wherefore the judgment is affirmed.