## City of Jackson et al. v. First Nat. Bank of Jackson.

Nov. 14, 1941.

4

Samuel Wilson and C. S. Landrum for appellants.

A. H. Patton, Grannis Bach, Smith & Leary and Clifford E. Smith for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming ing part and reversing in part.

The appellee, the First National Bank of Jackson, Kentucky, filed this action against the appellant, City of Jackson, and the members of the city council and the Treasurer seeking to recover on certain warrants and bonds of the City held by the Bank. The City answered denying liability on a major portion of the various items for which judgment was sought and also counterclaimed against the Bank for numerous items. Judgment was rendered in behalf of the Bank as to some of the items sued on and in favor of the City as to others. On the counterclaim judgment was rendered in favor of the Bank. The City prosecutes this appeal from such portions of the judgment as were adverse to it on the claims asserted by the Bank and from the adverse judgment on its counterclaim while the Bank cross-appeals from that portion of the judgment denying recovery on certain of the claims set out in the petition. We will consider separately the various items in controversy between the parties but not in the order in which they were set out in the petition. ·

On December 1, 1927, pursuant to a popular vote at the regular November election, 1927, the City issued $16,000 of street improvement bonds and the Bank became the holder thereof. Ten of these bonds had been paid at the time of filing this action and the petition sought recovery on one bond in the sum of $1,000 due December 1, 1938, and also recovery on interest coupons of

$157.50 and $131.25 and further sought that the City be required to pay the remaining five bonds when they became due. The City denied liability asserting that at the time the bonds were issued the City had already reached its maximum limit of indebtedness under Section 158 of the Constitution. By counterclaim the City sought judgment against the Bank for $15,999.58, principal and interest paid on the bonds. The chancellor upheld the validity of the bonds, rendered judgment in accordance with the prayer of the petition and dismissed the City's counterclaim. The correctness of this decision is called into question by the appeal, the sole question on this phase of the case being whether the maximum permissible limit of indebtedness had been exceeded by the City when the bonds were issued.

The testimony discloses that at the time the bonds were issued the outstanding indebtedness of the City was composed of two bond issues, one of $6,000 dated January 1, 1915, and the other $27,500 dated January 1, 1923, a total of $33,500. From this indebtedness must be deducted cash on hand in the sinking fund to meet these bonds of $2,649.31 and the further sum of $5,801.09, the amount of taxes levied for the 1927 sinking fund account. This leaves a net debt of $25,058.22 at the time the bonds were issued. Adding the $16,000 in bonds to the net debt would make a total debt of $41,058.22.

The total assessed value of all taxable property in the City according to an assessment of May 1, 1926, was $663,087.20, exclusive of the value of the property of franchise paying corporations and the value of bank shares. The assessed value of the property of franchise paying corporations was $107,392 and that of bank shares was $180,000 so that the total assessed value of all property was $950,479.20. Five per cent of this amount is $47,523.96, which would be the limit of indebtedness under Section 158 of the Constitution. It is thus seen that the total city indebtedness, including the bonds in question, was well within the limit permissible under the Constitution.

The City, in attempting to demonstrate that the constitutional limit of indebtedness had been exceeded, included in its calculations interest accruing on bonds amounting to $837.50 and overdrafts in the general fund and police fund amounting to $679.60 and also school improvement bonds issued August 1, 1927, amounting to

$20,000. Further, in its calculation of the maximum permissible indebtedness, it did not include in the last assessment the $180,000 of bank shares. This method of calculation was incorrect since it must be assumed, in the absence of proof to the contrary, that the current revenues of the City were sufficient to discharge the interest due and take care of the overdrafts. Further, the school improvement bonds amounting to $20,000 were not obligations of the City. While the City is one of the fourth class and its boundaries and that of the school district are coincidental, the school district is a separate taxing unit from the municipality and it may incur an indebtedness not exceeding the limit fixed by the Constitution and the school district may also incur an indebtedness within limitations fixed for school purposes by the Constitution. Shaw v. City of Mayfield, 191 Ky. 389, 230 S. W. 539; Rogan v. Board of Education of City of Middlesboro, 192 Ky. 770, 234 S. W. 443; Boll v. City of Ludlow, 227 Ky. 208, 12 S. W. (2d) 301. Clearly the value of bank shares was taxable property in the City and must be considered in determining the maximum limit of indebtedness. Such shares are taxable in the City. Kentucky Statutes, Section 4092. Such tax to be levied by the City, it is true, is limited to 20 cents on the $100 but the fact that such property is not subject to the maximum tax which the City could levy on other property for sinking fund purposes for the payment of bonds does not operate to remove the property from that class to be considered as constituting the assessed valuation under Section 158. The City might impose the permissible tax of twenty cents on the $100 on this property for sinking fund purposes, not being limited to the imposition of this tax for general purposes as claimed in the brief for the City, and, clearly, the fact that it could not impose the higher rate of tax on this property for such purposes by reason of the statutory restriction does not remove the property from the class to be considered under Section 158 of the Constitution providing a limit of indebtedness. It is clear that the issuance of the $16,000 in bonds by the City did not create an indebtedness beyond the constitutional limit and the bonds are valid. The chancellor was correct in so adjudging and in dismissing the counterclaim of the City for money paid in satisfaction of the previous bonds.

The next question to be considered concerns an issue

of $15,000 in funding bonds as of January 1, 1935, which were issued and disposed of without a vote of the people and without the issuance thereof ever having been approved by a court of competent jurisdiction as required by Section 186c-6, Kentucky Statutes. In paragraph 4 of the petition, the Bank sought to recover on one bond of this issue and on interest coupons of this issue and to require the City to pay eleven other bonds of the same issue when due. The twelve bonds were the remaining outstanding and unpaid bonds of the issue referred to. The City by answer alleged the invalidity of the bonds on the ground that the City's constitutional limitation of indebtedness was exceeded by their issue and on the ground that they had not been approved by a court of competent jurisdiction.

Recognizing the invalidity of the bonds because of a failure to secure court approval thereof, the Bank, by amended petition, alleged the following state of facts: On and prior to January 1, 1935, the date the bonds were issued, the City had outstanding certain warrants amounting with interest to $18,911.09, the face of the warrants being $17,382.81. The Bank itself was the holder of some of the warrants, aggregating with interest $9,745.69, face value being $9,190.60. Certain of the warrant holders, in order to get their warrants paid, agreed to reductions thereof aggregating $2,334.65 (principal $1,386.35, interest $948.30), leaving a net amount due on the warrants of $16,576.44 of which $15,190.09 was principal, the balance interest. The Bank was paid a $1,000 bonus by the City to take the funding bonds. The $15,000 in bonds were issued to the Bank and at the same time a note of the City for $2,697.42 was executed to the Bank, making a total of $17,697.42 evidenced by the note and funding bonds. In this transaction $120.89 was passed to the general fund of the City so that the City actually received a benefit in the transaction of $16,697.33, interest included, which, together with the $1,000 bonus to the Bank, constituted the total amount of obligations of the City (the bonds and note) then placed in the hands of the Bank. It may here be noted that the note of $2,697.42 executed to the Bank was sued on in another paragraph of the petition which also sought judgment on a $2,000 note executed to the City by the Bank which will be considered later. When the funding bond transaction was consummated and the note delivered to the Bank, all of

the above-mentioned warrants were surrendered to the City. The Bank, by the amended petition, claimed the right, if the bonds were void, to be subrogated to the rights of the warrant holders and this position is vigorously contested by the City which contends that no such right of subrogation exists because the City was a mere volunteer in paying off these obligations and a volunteer is not entitled to subrogation. Numerous authorities are cited to sustain this argument and they do undoubtedly sustain the general proposition that a mere volunteer, who is not under legal obligation to pay the debt to another, is not entitled to subrogation. But in this transaction the Bank was not a volunteer since the transaction was completed not only with the City's knowledge and acquiescence but with its active participation. The Bank undertook to discharge these obligations of the City and surrendered its own obligations when the transaction was consummated and can in no sense said to be a volunteer. It cannot be doubted that at the request of the City the Bank surrendered $9,190.60 held by it in city warrants and discharged other obligations of the City. The delivery by the City to the Bank of void bonds in payment of an existing indebtedness did not, of course, operate as a payment of that indebtedness but left the debt undischarged. Further the delivery of void bonds to the Bank to compensate it for discharging the warrants held by other parties at that time undoubtedly entitled the Bank to be subrogated to the rights of the holders of the warrants which were discharged. This identical proposition was decided in Board of Commissioners of Kearny County, Kansas, v. Irvine, 8 Cir., 126 F. 689, 693, and Coffin v. Board of Commissioners, 8 Cir., 57 F. 137, 6 C. C. A. 288. In the former case the court said:

> "We perceive no reason, therefore, why these complainants, who bought void bonds that were issued confessedly in payment of outstanding warrants, which the county had recognized as valid by issuing the bonds, may not, on well-recognized equitable principles, assert that the sale of the bonds to them operated as an assignment of the warrants, and vested them with all the rights of the original warrant holders, when it was discovered that the bonds were utterly void and could not be collected."

To the same effect is Geer v. School District, 8 Cir., 111 F. 682. The rule laid down in the Geer case and the

Kearny case was cited with approval in Board of Trustees of Fordsville et al. v. Postel et al., 121 Ky. 67, 88 S. W. 1065, 1066, 123 Am. St. Rep. 184, the court saying:

"The bonds being void under a constitutional provision similar to ours, it was held that the bondholders were entitled by subrogation to the rights of the holders of the county warrants which had been paid off with the proceeds of the bonds."

We think the rule enunciated in these authorities is sound and that the Bank was entitled to judgment for such of its warrants included in this transaction as were valid and for the money it put up to discharge the other warrants. It was the Bank's money paid to the City for the void bonds that was applied to the redemption of outstanding warrants of the City and the Bank is clearly entitled to judgment for such outstanding warrants as were valid.

We find, however, that while the chancellor correctly decided that the Bank was entitled to recovery the judgment is completely out of line as to amount. The $2,697.42 note executed to the Bank in this transaction, which was sued on in a separate paragraph of the petition as mentioned above, had been renewed on June 8, 1937, in the sum of $2,500. Judgment was rendered for the $2,500 evidenced by this note and, although the chancellor held invalid three of the Bank's warrants for $3,000, $2,481.30 and $100 respectively, totalling $5,581.50, which were included in the Bank's warrants surrendered at the time of this transaction, judgment was rendered for the Bank for the further sum of $10,873.23 with interest from January 1, 1935, and this in the face of the fact that three of the bonds totalling $3,000 together with interest coupons on all the bonds, aggregating $2,061.67, had been paid on the bonds. The effect of this judgment is that the Bank would receive on the transaction the note of $2,697.42, the $5,259.09 (payment of the three bonds and interest) as well as the $10,873.23 adjudged. The note should be considered a part of this funding bond transaction and in lieu of the judgment rendered on that note and the judgment of $10,873.23 judgment should be rendered for the Bank for the amount of its warrants surrendered at the time of the transaction and for the other warrants discharged by it and for the cash of $120.89 it then put up and this amount should be credited by the $197.42 paid on the note and

the $5,061.67 paid on the bonds. Interest on the surrendered warrants should be disregarded in accordance with conclusions hereinafter stated.

We have noted above that the chancellor found that three warrants held by the Bank for $3,000, $2,481.30 and $100 respectively, included in the warrants surrendered by the Bank at the time the funding bonds were issued, were held invalid. The Bank cross-appeals from that portion of the judgment holding the two warrants of $3,000 and $2,481.30 invalid. We are unable to understand upon what theory the chancellor held these two warrants invalid since no reasons were assigned for his action. The warrants were issued October 7, 1929, and were ordered to be issued by the City Council to cover an overdraft of the City with the Bank, the overdraft being in the general and police funds. The presumption is that in issuing these warrants the officers did their duty and issued them only for a valid indebtedness. The warrants being duly issued are, of course, prima facie evidence of the validity of the claim to cover which they were issued. This being true it devolved on the City to establish that the warrants were invalid. No pleading appears attacking the invalidity of these warrants which were set up and sued on in the Bank's amended petition. Assuming, however, that the warrants were found to be invalid because they were issued in satisfaction of an overdraft, and considering the pleadings sufficient to call them in question, we are nevertheless of the opinion that the chancellor erred in disallowing a recovery on them. The City having created this overdraft it must be considered an ordinary borrowing and lending transaction, that is, that the City had borrowed this amount from the Bank during the year, which it had a right to do in anticipation of its current revenues as will hereafter be pointed out in discussing another phase of the case. It is not pleaded or established that in creating this overdraft, in effect borrowing the money from the Bank, the City exceeded the anticipated revenues for the year and therefore the overdraft must be considered a valid indebtedness of the city. These two warrants should be considered as valid by the chancellor in determining the amount for which the City is entitled to judgment on this funding bond transaction, the net amount of which should be determined in accordance with the considerations stated above.

In paragraph 5 of the petition the Bank sought recovery on a $2,500 note executed in 1937 as a renewal of the $2,697.42 note executed to the Bank at the time of the funding bond transaction. This note has been considered in connection with the funding bond transaction sued on in paragraph 4 and the judgment rendered in favor of the Bank thereon should be set aside so that this note may be taken in connection with the funding bond transaction when judgment is entered with reference thereto.

In paragraph 5 the Bank also sought judgment on a note of $2,000 executed on March 2, 1936. Recovery was denied and the Bank prosecutes a cross-appeal from this judgment. On March 2, 1936, this note was authorized by the council, the City Treasurer being directed "to arrange a loan with the First National Bank $2,000 to be set apart and used as a building fund for the new city hall." A committee was appointed to arrange the transaction by the ordinance and pursuant to the ordinance the note was executed. It is insisted by the City that the note is invalid because there is nothing in the record to show that the proceeds of the note were received by the City and further, that at the time of the execution of the note the maximum limit of indebtedness of the City had been exceeded and, third, that the City had no power or right to borrow the money; also that there was no pledging of the current revenue for the year to secure the note when it was executed. We are of the opinion that none of the reasons assigned were sufficient to show that the note was invalid. The burden was not on the Bank to establish that the City received the proceeds of the note. The execution of the note created at least a prima facie liability on the part of the City, assuming it has a right to execute the note, and the burden was on the City to show no consideration or that the City did not receive the proceeds thereof. It must be assumed in the absence of pleading and proof to the contrary that the current revenues of the City were sufficient to discharge the note. The fact that the current revenues were not specifically pledged by the ordinance directing the execution of the note or by the note itself is immaterial since the current revenues would be pledged by operation of law and the holder of the note had the right to compel the application thereof for the discharge of the note.

We have heretofore shown that the constitutional limit of indebtedness had not been exceeded at the time

this note was issued. Much argument is indulged in in the briefs as to the right of the City to borrow money in anticipation of current revenues for the year. It would extend this opinion unduly to give consideration to all the authorities and reasons advanced pro and con on this proposition and we will content ourselves with saying that it seems clear that Kentucky Statutes, Sections 3490-26 and 3490-34, impliedly, at least, confer such authority on the City. The former section provides that:

"The board of council, aside from the indebtedness herein authorized, shall have no power to incur an indebtedness on behalf of the city which can not be met out of the revenue of the current fiscal year; * * *."

And the latter provides that:

"If at any time the board of council shall deem it necessary to incur any indebtedness, the payment of which can not be met without exceeding the income and revenue provided for the city for that particular year, * * *."

We think these sections clearly recognize and impliedly confer on fourth-class cities the right to incur indebtedness on behalf of the City which can be met out of the revenues of the current fiscal year. This being true and it not being shown that the current revenues had been exhausted at the time of the execution of the $2,000 note, the Bank was entitled to judgment therefor and in this particular the judgment is reversed on the cross-appeal.

In paragraph 2 of the petition the Bank sought judgment on a large number of warrants issued in the years 1935, 1936 and 1937 aggregating $7,275.67. The City admitted liability on a portion of these warrants aggregating $3,363.60 but asserted the invalidity of the remainder for various reasons. The chancellor found all of the warrants to be valid and rendered judgment accordingly and the appeal brings into question this ruling.

It is contended that certain of the warrants were void because issued and signed by the City Clerk and Mayor without authority of the council. Since the judgment permitted recovery on the warrants with interest from January 1, 1938, it is not necessary to itemize or list separately the warrants claimed to be void because issued without authority, it being sufficient to say that

they aggregate $891.75. We think the proof fairly establishes that these warrants were issued without any order of the council. The City Clerk testified that frequently the Mayor would call him on the telephone and direct him to issue warrants and that he did so although seriously doubting the legality of such procedure, issuing the warrants on the assurance of the Mayor that the work for which the warrants purported to be issued was done. It is true that in his testimony the witness did not purport to examine the entire records of the council but merely looked at certain pages of the records immediately preceding those where certain warrants were issued and testified accordingly that the warrants were not authorized. The Bank claims that the testimony of this witness was insufficient to establish lack of authority for the warrants and refers to questions asked the witness on cross-examination as follows:

"Q. 2. You testified about certain warrants having been issued and no order or orders of the city council allowing the warrants, what was the extent of your search for the purpose of ascertaining whether or not orders had been actually made for these warrants? A. Well I just looked at the records that were made at that meeting.

"Q. 3. You just looked at the records of the proceedings of the city council just prior to the issuing of these warrants? A. That's right."

Considering the testimony of this witness as a whole, however, we think the fair import of it is that there was no authorization of the warrants and that under the circumstances, in view of the extent to which the testimony had gone, it was incumbent on the Bank, if it desired to rebut the apparent effect of this testimony, to point out portions of the record showing that the warrants were actually authorized. The situation is such as to leave no doubt in our minds that the warrants were unauthorized by an order of the council. This being true the Bank may not recover on them. City of Princeton v. Baker, 237 Ky. 325, 35 S. W. (2d) 524; Fidelity & Casualty Co. of New York v. Breathitt County et al., 276 Ky. 173, 123 S. W. (2d) 250. The trial court was in error in rendering judgment for these warrants aggregating $891.75.

It is argued by the Bank that even if the warrants were unauthorized yet the council ratified them by two

certain ordinances referring to them and recognizing their validity. It is sufficient to say, in answer to this, that neither of the ordinances mentions specifically any one or more of the warrants, but merely refer to and recognize as valid an aggregate amount of outstanding warrant indebtedness of the City. This we think was wholly insufficient to establish ratification as to any particular warrant.

It is contended by the City that certain other warrants aggregating $365.28 for work on a new city hall which was being constructed and two other warrants of $500 each issued to T. M. Davidson to cover the contract price of a lot upon which to construct the city building were void because at the time they were issued the maximum limit of indebtedness under the Constitution had already been exceeded. We have already shown, however, that such was not the case. It is further contended that the two warrants to Davidson for $500 each were invalid because they appropriated or attempted to appropriate revenues of the City for the years 1937 and 1938 respectively. They were issued on October 26, 1935, and were payable out of the general fund of the years 1937 and 1938 respectively. It is further contended that they were void because their issue was not authorized by the council. As to the latter objection we find that the council did approve the contract by which the City purchased the lot, this being done by resolution of July 5, 1935, and warrants were directed to be issued when deed was made. The fact that the warrants were payable out of future years' revenues did not invalidate them since the indebtedness was a valid one and the warrants should have been made payable out of the current years' revenues. It is insisted, however, that the warrants were also void because at the time they were issued the City had already issued warrants in that year aggregating more than $6,000 which together with approximately $4,000 necessary for governmental expenses for the remainder of the year, exceeded the income and revenue of the City for the year. We find, however, that paragraph 2 of the answer and counterclaim, which was responsive to paragraph 2 of the petition in which the cause of action on these warrants was set out, did not plead that at the time the warrants were issued the income and revenue for the year had been exceeded. The warrants on their face imported a prima facie indebtedness of the

City, the presumption being that the officers in issuing the warrants performed their duty and the burden of proof to show the illegality thereof was upon the party alleging that the indebtedness was illegal. City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603. It is true that in subsequent paragraphs of the answer asserting the invalidity of other items of indebtedness it was pleaded that the income and revenue for the year 1935 had been exceeded on the 1st of July, prior to the issuance of the warrants in question, but this pleading was not responsive to the paragraph of the petition asserting the cause of action on the warrants and did not assert specifically the invalidity of any one of the warrants for this reason. We are of the opinion that the chancellor committed no error in finding these warrants to be valid.

It is pointed out by the City that for the years 1935, 1936 and 1937 the total revenue of the City was only $31,916.71 and that during the same period warrants aggregating $46,885.98 were issued, an excess of expenditures over receipts to the extent of $14,969.37. This, however, was in no way sufficient to establish the invalidity of any particular warrant. To show that any particular warrant was invalid it was incumbent on the City to plead and prove that at the time the indebtedness evidenced thereby was created the City had already expended or contracted to expend all revenue provided for that year. Waddle v. City of Somerset, 281 Ky. 30, 134 S. W. (2d) 956. And after a valid debt is created it may not be invalidated by the incurring of other non-governmental debts and the expenditure of the year's revenue in payment thereof. Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321.

It is next insisted by the City that six warrants sued on by the Bank in paragraph 2, issued to A. S. Sizemore in the sum of $100 each in the years 1936 and 1937, were invalid except to the extent of $10 for each of the warrants. This controversy arises as follows: The salary of the chief of police of the City was fixed at $10 per month by ordinance of January 4, 1932, and was to be supplemented by certain fees. On August 3, 1931, acting in accordance with Section 3504, Kentucky Statutes, the council enacted an ordinance providing for the election of a chief of police by the people at the November election, 1931, and thereafter. A chief of police was elected at the

November election, 1931, and this was for a term of four years although the statute referred to above authorizes election only for a period of two years. See Baker v. Combs, 194 Ky. 260, 239 S. W. 56. The salary of $10 per month was, of course, applicable to the four-year term and could not be changed during that term. The elected chief of police resigned and on September 30, 1935, A. S. Sizemore succeeded him in that office. That portion of the ordinance appointing Sizemore reads as follows:

"On motion of B. T. Chapman seconded by John Stamper, Jr., to employ A. S. Sizemore as chief of police of Jackson, Kentucky, and Mize Hensley as Deputy Police, to be paid $100 per month."

No election was held in November, 1935, to elect a chief of police for the term commencing January 1, 1936, but at a meeting of the council on December 2, 1935, Sizemore was appointed chief of police and continued to act as such until in November, 1936, he was elected by the voters and on December 28, 1937 an ordinance was enacted directing that thereafter the office of chief of police should be filled by a vote of the city council and on January 3, 1938, the salary of the chief of police was fixed at $100 per month. Undoubtedly the ordinance fixing the salary of Sizemore as chief of police at $100 per month was ineffective in so far as the remainder of the year 1935 was concerned since it attempted to change the salary of an officer during the term for which he was elected. Therefore, payment to Sizemore of more than $10 per month out of the treasury during October, November and December of 1935 was illegal, if he was so paid, but the warrants sued on by the Bank are not for 1935 salary of Sizemore but are for portions of his salary earned in the years 1936 and 1937. While the council could not increase the salary of the chief of police for any portion of the year 1935 we are of the opinion that the ordinance of September 30, 1935, above quoted appointing Sizemore chief of police validly fixed the salary of $100 per month payable to Sizemore as chief of police during the years 1936 and 1937. This being true the warrants issued to him in 1936 and 1937 were valid and the Bank was entitled to recover thereon.

Included in the warrants sued on in the second paragraph of the petition were three warrants of $366.43, $393.57 and $444.25 which were issued to the Bank for accrued interest on warrants of the City held by it at the

time the interest warrants were issued. The City contends that error was committed in rendering judgment in favor of the Bank on these warrants for the reason that interest was not properly payable on the city warrants. This question of interest will be discussed in connection with the contention of the City that the trial court committed error in denying it a recovery against the Bank on interest warrants which had been paid to the Bank in the amount of $3,239.37 and since, in connection therewith, we are holding that the counterclaim of the City was properly dismissed as to those items the chancellor correctly adjudged the Bank entitled to recover upon the three interest warrants mentioned.

This brings us to a consideration of the final question, namely, whether interest is payable on warrants issued by a city of the fourth class. The City in its counterclaim alleged that certain warrants aggregating $3,239.97 had been issued to the Bank during the years 1930 to 1937 covering accrued interest on warrants of the City held by the Bank at the time the interest warrants were issued and sought judgment against the Bank therefor. All warrants issued by the City were in the form of an ordinary check drawn on the Bank and signed by the City Clerk and Mayor, styled warrants. They did not profess to bear interest. The Bank apparently did not present any of the so-called warrants to the Treasurer for payment and have them indorsed "no funds" or indorsed as interest bearing. The course of conduct seems to be that the Bank at certain times would compute the amount of interest accrued and owing on all warrants held by it and would then procure the City to issue an interest warrant covering such accrued interest. It may here be remarked that the Treasurer of the City was the cashier of the bank and the account of the City was, of course, kept at the Bank. It is most earnestly argued by counsel for the City that interest is not properly payable on warrants of a municipality of the fourth class but it is rather impliedly conceded that if it was authorized to borrow money and issue a warrant, note or other obligation or evidence of debt for the money so borrowed then interest is payable. We have heretofore disposed of the contention that the City has no power to borrow money and since we have held that it can do so we see no reason why interest should not be payable on its obligations. The general rule is that interest is allowed as a

matter of law on all liquidated demands as they become due. Com. v. Kentucky Power & Light Co., 257 Ky. 66, 77 S. W. (2d) 395; Congoleum-Nairn, Inc., v. Livingston & Co., 257 Ky. 573, 78 S. W. (2d) 781. Apparently the same rule was applied as to municipalities in City of Louisville v. Henderson's Trustee, Ky., 13 S. W. 111. No valid reason is assigned why the City should not pay interest on its valid liquidated claims and we are of the opinion that it should in a proper state of case.

However, it is clear that interest should not be payable on warrants of the character here involved until the warrant has been presented for payment and payment denied. The warrants did not purport to bear interest and were in the nature of a check, being nothing more than an order to the Treasurer to pay out of funds in his hands. In the absence of proof to the contrary it will be presumed that the City had in the treasury money available to pay the warrant and where it is not shown that demand was made for payment interest is not payable. The Bank having failed to allege a demand for payment of the warrants sued on is only entitled to recover interest from the time of filing this action, which is in itself a demand. The judgment to be entered should therefore allow interest from the filing of the action; not from the date of the warrants.

However, as to the warrants actually issued to the Bank for accrued interest, the presumption of validity controls and entitles the Bank to recover thereon. The presumption is that the warrants were issued for interest legally payable, that is, that they were issued to pay interest on warrants which had been presented for payment but remained unpaid, entitling the holder to interest.

In holding that these interest warrants are valid we are not unmindful of the City's argument that the Bank was, in effect, Treasurer of the City and was purchasing warrants at a discount and that interest should be denied under the principles enunciated in Fidelity & Casualty Co. of New York v. Breathitt County, 276 Ky. 173, 123 S. W. (2d) 250. But we do not think that case is controlling. There the sheriff, who should have paid over to the County Treasurer tax money collected so that the money would be available to pay warrants, used the money to purchase warrants at a discount. It was held that as the sheriff was using the county's money in the

purchase of the warrants he was not entitled to charge the county interest on its own money. No such situation is revealed in the instant case—the money of the City was not used by the Bank in purchasing warrants issued by the City. The chancellor correctly denied a recovery on this item of its counterclaim, which is the final item under consideration.

The judgment is affirmed in part and reversed in part on the original appeal and affirmed in part and reversed in part on the cross-appeal, with directions to enter a judgment in conformity with this opinion.