MONROE COUNTY v. COUNTY DEBT COMMISSION et al.

Court of Appeals of Kentucky.

March 28, 1952.

Joseph R. Rubin, Franklin P. Hays and Skaggs, Hays & Fahey, all of Louisville, for appellant.

A. E. Funk, Atty. Gen., Hal Williams, Asst. Atty. Gen., Roy H. Pennington, Asst. Atty. Gen., for appellee, County Debt Commission of Kentucky.

Abe P. Carter, County Atty., J. Paul Carter, Tompkinsville, for appellees, Judge Fred Evans, and Fiscal Court of Monroe County.

SIMS, Justice.

We are confronted on this appeal with two questions, the first of which is one of first impression: (a) Should the value of property exempted by statute from county taxation, but not exempted by the Kentucky Constitution, be included in the computation of all taxable property in the county for the purpose of determining the maximum debt limit of the county under § 158 of our Constitution? (b) Is a declaratory judgment of the Monroe Circuit Court, including for the purpose of computing the debt limit the value of property exempted by statute, res adjudicata and binding on the State Local Finance Officer and the County Debt Commission?

The State Local Finance Officer, hereinafter referred to as Finance Officer, answered both of these questions in the negative. On appeal to the County Debt Commission, hereinafter referred to as the Commission, his decision was upheld, and Monroe County under KRS 66.310(4) filed its petition in the Franklin Circuit Court asking a review of the Commission's finding. That court sustained the finding of the Commission and the county appeals.

The fiscal court of Monroe County duly submitted to the voters of the county under § 157 of our Constitution the question of issuing bonds in the amount of $60,000 to be used in building a hospital with the aid of the federal government. This bond issue was approved by more than the necessary two-thirds majority at the regular

November election in 1948. However, when the bonds were submitted to the Finance Officer under KRS 66.310 for his approval, he found the assessed value of the property in the county, subject to the county tax levy, was $4,061,990; 2% of which is $81,239.80, and when the outstanding indebtedness of $34,350 is taken therefrom, there is left as a constitutional limit of indebtedness $46,889.80. Therefore, the Finance Officer approved the bonds in the amount of $46,000.

The county insists that the value of farming and manufacturing machinery, livestock and intangibles, which KRS 132.-200 exempts from county taxes, should be included in the "value of taxable property" in the county. This property thus exempted by statute from all but state taxation had a value of $638,127 in Monroe County, and had it been included in the "value of taxable property" in the county, the limit of the bonds voted would have been raised from $46,000 to $56,000. In this litigation the county is insisting that it should be allowed to issue the hospital bonds in the additional sum of $10,000.

The argument of appellant is that this $638,127 is not exempt from county taxation by the Constitution and it is only a statutory exemption which may be changed at any time by the Legislature; and since it is not a constitutional exemption, it should be included in the "value of taxable property" in the county. True, this exemption might be changed at any time by the Legislature, but we are dealing with the exemption at the time the bonds were voted and are not at liberty to consider future possibilities. It is clear to us, as argued by appellees, that the framers of our Constitution in limiting the amount of indebtedness the county might incur to not exceeding 2% of the value of taxable property in the county, intended that the taxable property would bear the obligation of satisfying the bonded indebtedness. The property exempted under KRS 132.200 is taxable only for State purposes and as it cannot be taxed for the purpose of maturing these bonds, it cannot be included in the "value of taxable property" in the county.

In answering this argument made by appellees, the county says that in Griffin v. Clay County, 304 Ky. 592, 201 S.W.2d 733, we held that once a county incurred a legal debt, it was bound to pay same, and to do so could levy an unlimited tax rate on properties which are in each given year subject to taxation by a state statute. But this exempt property could not be taxed since the Legislature in KRS 132.-200 prohibits a levy being laid on it for other than state purposes. The Griffin opinion points out that a tax in excess of the maximum specified in § 157 may be levied to satisfy an existing obligation of the county since under our present safeguards no such debt can again be incurred. Here, we are asked to permit the county to exceed its constitutional debt limit and then apply the doctrine of the Griffin case in satisfying that debt. This we cannot do.

As supporting its position that this exempted property should be included in the "value of taxable property in the county", appellant relies upon City of Winchester v. Nelson, 175 Ky. 63, 193 S.W. 1040; City of Jackson v. First Nat. Bank of Jackson, 289 Ky. 1, 157 S.W.2d 321; and the foreign cases of Windsor v. City of Des Moines, 110 Iowa 175, 81 N.W. 476; L. L. F. Realty Co. v. Fuchs, 273 App.Div. 111, 75 N.Y.S. 2d 356. On the point for which it is cited, the Nelson case merely holds that franchises are property which should be considered in computing the aggregate taxable property in the city. The Jackson case is to the effect that bank shares, though taxable at only 20¢ on the $100 by the city, should be computed in arriving at the taxable property in the city. Neither of these domestic cases is applicable here.

The Fuchs case, 273 App.Div. 111, 75 N.Y.S.2d 356, seems to rest upon the ground that the city may amend its charter at any time so as to make the exempted property subject to taxation, therefore same should be included in the "value of taxable property". But as above stated, we feel compelled to include only property which is now taxable and not that which may in the future be made taxable by an amendment to the existing statute.

The Windsor case, 110 Iowa 175, 81 N. W. 476, 478, appears to support appellant's contention that all property within the limits of the city, whether taxable by it or not, should be included in the "value of the taxable property" for the purpose of determining the debt limitation. Article 11, § 3 of the Iowa Constitution I. C. A. deals with debt limitation of counties, and other political subdivisions, and is practically the same as § 158 of our Constitution. But this Windsor case appears out of harmony with the intent of the framers of § 158 of our Constitution and we are not disposed to follow it. We think Williams v. School Dist. No. 32, 56 Wyo. 1, 102 P.2d 48, 54, and State ex rel. Harrington v. City of Pompano, 136 Fla. 730, 188 So. 610, 625, both of which hold that "taxable property" for bond payment purposes does not include property exempted at the time the bonds were issued, are more in keeping with the purpose the framers of our Constitution had in mind when they wrote § 158.

In the record before us appears a petition in a declaratory judgment action brought by Shadrack Bartley, as a citizen, resident and property owner of Monroe County, against Monroe County wherein it is averred a controversy existed between the parties as to whether the exempted property should be included in the "valuation of the property in the county" for the purpose of determining the debt limit under § 158. The record does not show when this petition was filed, but it was verified on December 8, 1950, and on December 15th of that year judgment was rendered declaring the exempted property should be included in the assessed valuation. The petition did not ask the court to approve the bonds and the judgment did not do so, but only decided that the exempted property should be included in the assessed valuation of the county in arriving at the constitutional limit of indebtedness the county might incur. No appeal was prosecuted from this declaratory judgment.

The county insists this declaratory judgment approved the bonds as provided in KRS 66.210 and as no appeal was prosecuted therefrom it is res adjudicata and binding upon the county, the Commission and the Franklin Circuit Court in this action. The record before us conclusively shows irregularities in obtaining this declaratory judgment. This can be demonstrated by stating a few simple facts revealed by the record.

On September 20, 1950, the county filed its petition before the Finance Officer asking his approval of the bonds. It was signed "Fred Evans, County Judge of Monroe County, Kentucky." The Finance Officer did not render his decision until March 22, 1951, and while this petition was pending before him, the declaratory action was filed on or about December 7, 1950. Under § 51 of the Civil Code of Practice the summons in the declaratory action had to be served on the county judge. Although he had signed the petition before the Finance Officer asking approval of the bonds, the county judge did not call the declaratory action to the attention of the Finance Officer when the summons was served on him as county judge. Furthermore, the county's answer to the declaratory action was signed by Abe P. Carter, who was then County Attorney of Monroe County. This answer admitted all the averments of the petition in the declaratory action, except it denied that the $638,127 expressly exempted by KRS 132.200 from all but state taxation, was exempted from county taxation, and that the inclusion of this sum in the county valuation is contrary to § 158 of our Constitution. The county attorney evidently knew the petition for approval of the bonds had been filed with the Finance Officer, yet he failed to call to the attention of the Finance Officer the fact that the declaratory action had been filed.

It is evident the declaratory action was but a ruse to deprive the Finance Officer and Commission of the jurisdiction the statute gives them in the approval of such bond issues. The decision of the Finance Officer in approving the $46,000 bonds correctly stated he was not bound by the unappealed judgment in the declaratory action since neither he nor the Commission was a party thereto. Section 4 of KRS 66.310 provides for an appeal to the Franklin Circuit Court from a decision of the Commission and we cannot permit a county

to deprive the Commission of its authority, after once the county has petitioned the Commission to approve a bond issue, by obtaining a declaratory judgment to which neither the Commission nor the Finance Officer was a party and from which no appeal was prosecuted.

Under the suspicious circumstances shown by this record, the fact that no appeal was taken from the declatory judgment rendered on December 15, 1950, including the $638,127 exempted property in the assessed valuation of the county, stands out like a sore thumb. We do not mean to say we generally look with askance on unappealed declaratory judgments approving bonds. Where there has been a complete and full disclosure of all the material facts and circumstances, and there is no unusual question of law involved, we see no necessity of prosecuting an appeal from a declaratory judgment approving a bond issue or fixing a debt limitation. But where a record reveals facts as irregular as those shown in the present one, a court is bound to have grave doubts as to the correctness of a declaratory judgment fixing a debt limitation from which no appeal is prosecuted.

In the circumstances here presented, we can do nothing but say the judgment of the Monroe Circuit Court is void. This declaratory action is the character of litigation which was criticised in County Debt Commission v. Morgan County, 279 Ky. 476, 130 S.W.2d 779, at page 782, as being little more than a contrivance to thwart the County Debt Act, KRS 66.280 et seq.

In seeking to have the declaratory judgment held res adjudicata, the county relies upon such cases as Ballard County v. Kentucky County Debt Commission, 290 Ky. 770, 162 S.W.2d 771; Ex parte, City of Newport, 141 Ky. 329, 132 S.W. 580, 37 L.R.A.,N.S., 1034, Ann.Cas.1912C, 447; City of Newport v. Newport Nat. Bank, 148 Ky. 213, 146 S.W. 377; McDonald v. City of Lexington, 253 Ky. 770, 70 S.W.2d 534. These cases are distinguished from the one at bar on the broad grounds that the courts there had jurisdiction to render the judgments and the judgments were not tainted by fraud. As much cannot be said of the declaratory judgment here which the county asks to be held res adjudicata. The opinion in Farmers State Bank v. Owsley County, Ky., 238 S.W.2d 471, 475, closes with this language: "This opinion, together with the Clay County case, must not in any way serve as a soporific to encourage lethargy and indifference or lead to a conclusion that some chimerical plan to side-step the specific constitutional provisions will be countenanced." This is but an eloquent way of saying this court will not uphold a judgment obtained to circumvent our constitutional provision relative to debt limitation.

The judgment is affirmed.